STATE BAR GRIEVANCE ADMINISTRATOR v MARKOWITZ

Opinion of the Court

1. Attorney and Client—State Bar Grievance Board—Suspension.

Order of State Bar Grievance Board should be affirmed without alteration where the suspension imposed is not excessive.

2. Attorney and Client—Suspension—Adoption.

One-year suspension of an attorney is not excessive where he profited from his position as an attorney by acting as a middleman in child adoption proceedings and he not merely used the process to help join those who want to adopt with children who need adoption but abused the process in a piratical fashion.

3. Attorney and Client—State Bar Grievance Board—Suspension—Adoption.

The State Bar Grievance Board did not impose an inappropriate penalty, a one-year suspension, where an attorney asked the adopting father to sign a petition for rehearing, threatening that if the father refused, the attorney would file a motion in the name of the natural mother which would result in the natural mother learning the names of the adopting parents.

4. Attorney and Client—Suspension—State Bar Grievance Board.

An attorney's conduct was clearly unprofessional and his failure to tell the truth to the probate court attorney acting in an official capacity warrants the one-year suspension recommended by the hearing panel and affirmed by the State Bar Grievance Board.

5. Attorney and Client—Ethical Conduct.

The public should be able to expect and receive a high standard

References for Points in Headnotes

[1–4, 15] 7 Am Jur 2d, Attorneys at Law § 68.
[5, 6] 7 Am Jur 2d, Attorneys at Law §§ 38–43.
[7–9, 11, 12] 7 Am Jur 2d, Attorneys at Law §§ 17, 64.
[10, 13, 14] 7 Am Jur 2d, Attorneys at Law §§ 63, 66, 67.

of ethical conduct from those who have been admitted to the practice of law; indeed, the standard of conduct should be above that of the "average" person.

OPINION CONCURRING IN PART AND DISSENTING IN PART

T. G. KAVANAGH and LEVIN, JJ.

6. ATTORNEY AND CLIENT—ADOPTION—MEDICAL BILLS—REIMBURSE-
MENT—ETHICAL STANDARD—DISCIPLINARY STANDARD.

   *An attorney's statement to an unwed pregnant woman who wished to place her child for adoption that her hospital and doctor bills would be paid for her violated no rule of law, ethical or disciplinary standard; when the attorney paid those bills without prior court approval, he ran the risk that he would not be reimbursed.*

7. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—HEARING PANEL
—FINDINGS—ADOPTION —REIMBURSEMENT—EVIDENCE—PROFES-
SIONAL MISCONDUCT.

   *A State Bar hearing panel's finding that an attorney told an unwed pregnant woman who wished to place her child for adoption that he would buy her a car for $50 upon receipt of that sum from the adopting parents as reimbursement for money the woman had expended for the baby's clothing, standing by itself unconnected with other evidence, does not support a finding of professional misconduct.*

8. ATTORNEY AND CLIENT—PROFESSIONAL MISCONDUCT—ADOPTION—
PROBATE COURT—JURISDICTION—GRIEVANCE PROCEEDINGS—
HEARING PANEL—EVIDENCE—FRAUD.

   *An attorney did not commit professional misconduct under the circumstances of this case even if he suggested to an unwed pregnant woman who wished to place her child for adoption that she report as her residence to the probate court a home where she did not then live; it does not appear that the attorney knew that the woman did not intend to live with her child in that residence pending the adoption proceedings; the residence where the woman told the probate court she was staying and the residence where she actually stayed were in the same county; and thus, even if the residence of the natural mother had some effect on the jurisdiction of the probate court, no fraud could have been perpetrated on that court by substituting one address for another in the same county.*

9. ATTORNEY AND CLIENT—ADOPTION—INTEREST IN LITIGATION—MEDICAL BILLS—REIMBURSEMENT—EVIDENCE.

*An attorney helping an unwed pregnant woman place her child for adoption did not acquire an interest in the litigation where the woman repeatedly testified that she knew that she was ultimately responsible for the medical bills if the adoption was not completed, she acknowledged that she was obliged to reimburse the attorney if the adopting parents did not take the child, and the adopting parents testified that they had agreed to assume responsibility for the doctor and hospital bills, clothing and transportation costs.*

10. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—STATE BAR GRIEVANCE ADMINISTRATOR—COMPLAINT—REQUEST FOR INVESTIGATION—ANSWER.

*An attorney was adequately informed of a charge against him in the State Bar Grievance Administrator's complaint where it is apparent from both the attorney's response to the request for investigation and his answer to the formal complaint that he understood the charge.*

11. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—HEARING PANEL—FINDINGS—THREATS—PROBATE COURT—EVIDENCE—PROFESSIONAL MISCONDUCT.

*A State Bar hearing panel's findings that an attorney threatened to commence an action against his client and failed to respond accurately to an inquiry by the probate court attorney are supported by probative evidence and support the conclusion that he was guilty of professional misconduct.*

12. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—HEARING PANEL—STATE BAR RULES—QUORUM—STATE BAR GRIEVANCE BOARD.

*A State Bar rule provides that two members of a State Bar hearing panel shall constitute a quorum; if this rule does not adequately protect the rights of the public and of lawyers, the Michigan Supreme Court should change it; unless and until it is changed, the State Bar Grievance Board and hearing panels are justified in relying on it as written (State Bar Rule 16.3.2).*

13. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—STATE BAR GRIEVANCE ADMINISTRATOR—REQUEST FOR INVESTIGATION—STATE BAR RULES.

*A count in a grievance proceeding against an attorney was defective where the request for investigation was signed by the Assistant State Bar Grievance Administrator before the adop-*

tion of the amendment to the State Bar rules authorizing the Administrator to serve requests for investigation in his own name (State Bar Rule 16.4.8).

14. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—STATE BAR RULES—COMPLAINT—REQUEST FOR INVESTIGATION—STATE BAR GRIEVANCE BOARD—STATE BAR GRIEVANCE ADMINISTRATOR.

The State Bar rules carefully spell out the procedures to be followed before a formal complaint may be filed against an attorney, there are a number of safeguards designed to sift out meritless claims, and no formal complaint can properly be filed except in accordance with those procedures; if the Michigan Supreme Court were to validate proceedings on a formal complaint filed without a proper request for investigation, it would be tantamount to saying that the present limitation of prior approval of one member of the State Bar Grievance Board before the State Bar Grievance Administrator may serve a request need not be observed; even the present safeguard might fall into desuetude.

15. ATTORNEY AND CLIENT—GRIEVANCE PROCEEDINGS—STATE BAR GRIEVANCE BOARD—DISCIPLINE—SUSPENSION—PROFESSIONAL MISCONDUCT—SUPREME COURT.

The Michigan Supreme Court should find the State Bar Grievance Board's disciplinary order suspending an attorney for two years for professional misconduct excessive and reduce the discipline to suspension for 120 days.

Appeal from State Bar Grievance Board. Submitted June 7, 1974. (No. 11 June Term 1974, Docket No. 55,291.) Decided October 30, 1974. Rehearing denied 393 Mich 915.

Disciplinary proceedings against Seymour Markowitz. Order entered suspending respondent from practicing law for two years. Respondent appeals. State Bar Grievance Administrator cross-appeals. Affirmed.

*Louis Rosenzweig,* for the State Bar Grievance Administrator.

*Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C.,* for respondent.

M. S. COLEMAN, J. We concur in that part of Justice LEVIN's opinion which affirms the respondent's suspension, but cannot agree that the suspension imposed is excessive. Therefore, we would affirm the State Bar Grievance Board order without alteration.

We must not lose sight of what respondent has done. He has profited from his position as an attorney by acting as a middleman in child adoption proceedings, which comes within my definition of "gray marketing" of babies. He has not merely used the process to help join those who want to adopt with children who need adoption. He has abused the process in a piratical fashion. His suspension is not excessive.

The hearing panel found that respondent represented a married couple in adoption proceedings. He received a fee of $500. In addition to this fee, respondent demanded reimbursement for all medical costs attributable to the child's birth. The couple only agreed to pay so much as ordered by the probate court. The court disapproved reimbursement of some $800. Respondent then asked the adopting father to sign a petition for rehearing, threatening that if the father refused, respondent would file a motion in the name of the natural mother. This would result in the natural mother learning the names of the adopting parents. Petition for rehearing was filed. The probate court denied the petition.

It is this conduct which is characterized as "an idle, impetuous threat." The hearing panel obviously did not consider the threat in this light. The Grievance Board obviously did not so treat the threat. There is nothing submitted to this Court which would cause me to treat the threat any differently. Adoptive parents naturally want to

preserve their anonymity. Respondent threatened his own clients with disclosure of information gathered during the course of his representation of them. Such conduct would be reprehensible in any case. It is especially so when an attorney conducts himself in such a manner against his own clients. The State Bar Grievance Board did not impose an inappropriate penalty.

As to the other allegation of misconduct here at issue, the hearing panel found that respondent accepted an appointment as guardian ad litem for the natural mother in an adoption proceeding. This occurred after he had received $500 from the adopting parents and had been promised an additional $500. The adopting parents had been told by their attorney that such a fee had to be paid to respondent. Previously respondent had directed the natural mother to contact the attorney representing the adopting parents. After these events occurred, respondent stated to a probate court attorney that he had no interest in the proceedings, nor was he associated with the attorney representing the adopting parents.

Respondent's statements to the probate court attorney are characterized as a failure "to respond accurately" as a "lack of candor" and as "dissembling". Call it what you will, respondent's conduct was clearly unprofessional. I find respondent's failure to tell the truth to the probate court attorney acting in an official capacity warrants the one-year suspension recommended by the hearing panel and affirmed by the State Bar Grievance Board.

The public should be able to expect and receive a high standard of ethical conduct from those who have been admitted to the practice of law. Indeed, the standard of conduct should be above that of the "average" person. Lawyers historically have

been expected to obey laws and rules and to assist
the court. To deceive the court is to undermine its
very foundations, for it is a tenet of our judicial
system that lawyers are officers of the court.

We affirm the order of the State Bar Grievance
Board.

T. M. KAVANAGH, C. J., and WILLIAMS and J. W.
FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

LEVIN, J. *(concurring in part; dissenting in part).*
Seymour Markowitz appeals a disciplinary order of
the State Bar Grievance Board suspending him
from the practice of law for two years—one year
on Count II and one year on Count III of the
complaint. The State Bar Grievance Administrator
cross-appeals the hearing panel's dismissal of
Count I. We would affirm the finding of profes-
sional misconduct but reduce the suspension to
120 days.

The three counts of alleged professional miscon-
duct arise out of two separate private adoption
proceedings. Counts I and II relate to the adoption
of a child of Vicky X, and Count III to the adop-
tion of a child of Patricia X.

I

The hearing panel dismissed Count I because it
alleged violations of the new Code of Professional
Responsibility and Canons which was not adopted
until after commission of the acts charged. The
Administrator counters that since the essential
facts were alleged in the formal complaint and the
claimed misconduct was violative as well of the
former Canons of Professional Ethics, Markowitz
received adequate notice.

We see no need to decide the question whether

Markowitz received adequate notice as we are of the opinion that the record does not support a finding of professional misconduct under Count I. The facts are set forth in the margin.[1]

---

[1] In the spring of 1971, a former client referred an 18-year-old unwed pregnant woman, Vicky X, to Markowitz. Vicky wished to place the child for adoption.

In July, 1971, Mr. and Mrs. C retained Markowitz to represent them in the adoption of the child. Markowitz told them that his fee would be $500, and that they would be responsible for additional expenses such as doctor and hospital bills, clothing and transportation costs. Mr. and Mrs. C agreed to this arrangement.

In late August, when Vicky entered the hospital, she was told that a deposit was required. In labor, she called Markowitz who paid the deposit. Three days later, when Vicky attempted to leave the hospital with her child, she was asked for the balance due on her bill. Again she called Markowitz and he paid the bill.

Markowitz then arranged transportation for Vicky and her child to Oakland County Social Services where a boarding home placement was sought. There was testimony that Oakland County Social Services refused to provide housing because Vicky was a minor. Vicky and her child were brought to Markowitz's office. Several persons were called in an effort to obtain temporary shelter. Finally the woman who had driven Vicky to Oakland County Social Services, a part-time secretary for Markowitz, agreed to provide room and board for them pending the completion of the adoption proceeding. Mrs. C agreed to pay $100 a week for this service.

Mr. and Mrs. C took custody of the child on September 24, 1971. On December 14, 1971, a hearing was held in the probate court on Markowitz's petition for authority to pay fees and charges, including the hospital charges he had paid. The probate judge reaffirmed his prior ruling that he could not approve any prepaid items under MCLA 710.13; MSA 27.3178(553):

"No person or persons shall offer, give or receive any money or other consideration, or thing of value in connection with the placing of any child for adoption, or in connection with the consent to adoption, or with the petition for adoption except such charges and fees as may be approved by the probate court."

Markowitz appealed to the circuit court which affirmed on the ground that the probate judge had not abused his discretion in applying the Oakland County Probate Court policy disallowing reimbursement of prepaid items. The circuit judge did, however, express "serious reservations" about the policy limiting payment to unpaid items and suggested that the probate court reconsider its policy denying reimbursement of prepaid items. He found that Markowitz's construction of the statute and his claim for prepaid items were made in good faith.

The adopting parents had previously signed a document containing an itemized list of expenses. Before doing so, Mr. C inspected the hospital and medical bills. Mr. and Mrs. C then reiterated their

Markowitz's statement to Vicky that her hospital and doctor bills would be paid for her violated no rule of law, ethical or disciplinary standard. When he paid those bills without prior court approval, he ran the risk that he would not be reimbursed. His request for reimbursement was ultimately refused.

In seeking reimbursement, Markowitz advanced a construction of a statute (see fn 1) contrary to the view of the probate judge. On appeal, the circuit judge found arguable merit in the view advanced by Markowitz. Markowitz sought, but was denied, leave to appeal by the Court of Appeals. This is an even clearer case than *State Bar Grievance Administrator v Corace,* 390 Mich 419; 213 NW2d 124 (1973), where we set aside a disciplinary order entered against a lawyer who had in good faith *acted* on a view of the law different than that advanced by judges of the Common Pleas Court of the City of Detroit. Markowitz did

---

agreement to reimburse Markowitz upon completion of the adoption. Vicky's name appeared on those bills and thus was disclosed to the adopting parents.

After the probate judge had ruled against reimbursement, Markowitz phoned Mr. C and asked him to sign a petition for rehearing relative to the prepaid items. Mr. C testified that before he responded to Markowitz's request, Markowitz threatened that if Mr. C did not sign, Markowitz would institute legal action against the adopting parents in the name of the natural mother, presumably on the theory that she otherwise would be liable to reimburse Markowitz, thereby revealing their identity to her. This threat is the basis for Count II of the complaint.

Count I is based on a request for investigation filed by Vicky. The hearing panel found that Markowitz told Vicky that her hospital and doctor bills would be paid for her; that he himself paid those bills without prior court approval; that he promised Vicky he would buy her a car with the $50 she would be reimbursed for expenditures made by her for the baby's clothing; and that he suggested to Vicky that she misrepresent her residence in making a statement to the probate court in connection with the adoption proceedings. The hearing panel, nevertheless, dismissed Count I because it alleged violation of disciplinary rules of the new Code of Professional Responsibility and Canons which had not been adopted until after the occurrence of Markowitz's acts of alleged misconduct.

not act on his view of the law in opposition to the court, but simply petitioned the court for reimbursement. When the court rejected his petition, he was out-of-pocket over $700 expended for Vicky's hospitalization.

The finding that Markowitz told Vicky he would buy her a car for $50 upon receipt of that sum from the adopting parents, as reimbursement for money Vicky had expended for the baby's clothing, stands by itself unconnected with other evidence and would not support a finding of professional misconduct.[2] The Administrator's effort to show that Markowitz unduly pressured Vicky to induce her to part with the child failed when the hearing panel refused to permit such a charge to be added belatedly. An attorney for the Oakland County Probate Court testified that he was satisfied that Vicky acted voluntarily in consenting to the child's adoption.

The most serious charge under Count I is the claim and finding by the panel that Markowitz suggested to Vicky that she misrepresent her residence to the probate court.

The testimony and evidence on that issue is contradictory. Vicky told the probate court attorney that her address was the address of the woman who had agreed to care for the child pending the adoption proceedings. This woman testified that Markowitz had arranged for both Vicky and her child to stay with her. Vicky testified that she knew that she was supposed to live with the baby in the woman's home pending the completion of the adoption proceedings. However, she did not, but continued to live at her sister's home.

---

[2] There was evidence that Markowitz was in a position to procure a driveable used automobile for $50.

At one point in her testimony Vicky, who was then hostile to Markowitz, stated that he told her to give a "fake address". She then added that this had something to do with "the counties". This prompted the hearing panel to suggest that Markowitz was attempting to perpetrate a fraud on the probate court by having Vicky give a "fraudulent address to confer jurisdiction upon the court".

The statute, however, made the residence of the adopting parents determinative of jurisdiction.[3] Additionally, both the home of Vicky's sister and the home of the woman caring for the child were located in Wayne County. Thus, even if the residence of the natural mother had some effect on the jurisdiction of the Oakland County Probate Court, no fraud could have been perpetrated on that court by substituting one Wayne County address (where the child was living) for another (where the natural mother was living).

The probate court attorney's testimony did not refer to the circumstances surrounding the giving of the address of the woman caring for the child. It does not appear that Markowitz knew that Vicky did not intend to live with her child in the woman's residence.

There is no basis for the charge that Markowitz acquired an interest in the litigation. Vicky repeatedly testified that she knew that she was ultimately responsible for the medical bills if the adoption was not completed; she acknowledged that she was obliged to reimburse Markowitz if the adopting parents did not take the child. The adopting parents testified that they had agreed to as-

[3] MCLA 710.1; MSA 27.3178(541). Subsequently (1972 PA 235), the statute was amended to permit the petition to be filed in either the county of residence of the adopting parents or where the child "is found".

sume responsibility for the doctor and hospital bills, clothing and transportation costs.

The record does not support a finding of professional misconduct under Count I.

## II

The hearing panel found (Count II) that Markowitz threatened to sue the adopting parents in the name of the natural mother which would reveal their identity to her. Markowitz argues that Count II failed to provide adequate notice of this charge in that it did not state the date, place and time of the alleged threat. He argues that he did not know which of his former clients was referred to as the aggrieved party.

Markowitz was, however, adequately informed of the charge. In the request for investigation the complainant, Mr. C, stated that the threat was made over the telephone on October 26, 1971 at 2:30 in the afternoon. The formal complaint refers to the adoption of Vicky's child and alleges that Markowitz threatened his clients, the adopting parents, with litigation and to reveal their identity to the natural mother. It is apparent from both Markowitz's response to the request for investigation and his answer to the formal complaint that he understood the charge.

## III

Count III arises out of a second adoption proceeding. Patricia X, a previously married 20-year-old pregnant woman, was introduced to Markowitz by her employer. Markowitz referred her to Edward Gold, an attorney who represented the adopting parents in the adoption of Patricia's child. The adopting parents agreed that Markowitz would

receive $1,000 compensation. Markowitz paid Patricia's hospital expenses and reimbursed the natural father who had paid the doctor. The adopting parents agreed to reimburse him subject to probate court approval; the court refused to authorize reimbursement. Markowitz was appointed and acted as guardian ad litem for Patricia; subsequently, and before the adoption was completed, a substitute guardian ad litem was appointed.

The probate court attorney testified that after the foregoing arrangements had been made and $500 of Markowitz's fee had been paid and before the substitute guardian ad litem was appointed, Markowitz, in the course of an interview with the attorney, stated, in response to a question, that he had no interest in the outcome of the adoption and was not associated with Edward Gold. In the same interview, Markowitz acknowledged that he had paid Patricia's hospital and medical expenses.

## IV

Markowitz did not testify in his own defense. He offered no evidence to refute Mr. C's testimony in respect to Count II that the threat was made. Nor did Markowitz offer any evidence to refute the probate court attorney's testimony in respect to Count III that Markowitz did not disclose his interest in the Patricia X adoption when asked about it.

The hearing panel's findings that Markowitz threatened to commence an action against his client and failed to respond accurately to an inquiry by the probate court attorney are supported by probative evidence and support the conclusion that he was guilty of professional misconduct.

The old Canons of Professional Ethics provided:

"The lawyer owes 'entire devotion to the interest of the client* * * '." (Canon 15); it is his duty "to preserve his client's confidences". He may not use these confidences "to the disadvantage of the client * * * ." (Canon 37.) Under the present code, "[a] lawyer shall not intentionally * * * prejudice or damage his client during the course of the professional relationship * * * ." (DR 7-101-[A][3].) He may not "[u]se a confidence or secret of his client to the disadvantage of the client". (DR 4-101-[B][2].)

Although Patricia was a 20-year-old emancipated minor and there may have been no need for a guardian ad litem, that did not relieve Markowitz of the obligation to refrain from making a response less than wholly truthful and candid. Under the old Canons, a lawyer owes a duty of candor and fairness to the court and other lawyers. (Canon 22.) The new Canons similarly provide that a lawyer is obliged to refrain from conduct that is contrary to "honesty". State Bar Rule 15, § 2(3). Similarly, see DR 1-102-(A)(4).

## V

One of the three members of the hearing panel excused himself from the hearing shortly before the Administrator's evidence was completed. He did not hear any of the evidence proffered by Markowitz. Markowitz's attorney objected to the continuation of the hearing in the absence of the missing panel member. The report of the hearing panel states that the absent member did not participate in the deliberations regarding Count III.

Markowitz objects to the panel deciding Count III with only two members participating, and objects to the decision on Count II on the ground

that the member who excused himself from the hearing did not hear Markowitz's evidence.

There is arguable merit in Markowitz's position that all three members of a hearing panel should hear all the evidence and that no decision should be made in which all three do not participate. State Bar Rule 16.3.2 provides, however, that two members of a hearing panel shall constitute a quorum. If this rule does not adequately protect the rights of the public and of lawyers, this Court should change it. Unless and until it is changed, the Grievance Board and hearing panels are justified in relying on it as written.[4]

## VI

The request for investigation in respect to Count III, dated December 9, 1971, was signed by the Assistant State Bar Grievance Administrator. The formal complaint is dated May 8, 1972.

The State Bar Rules were amended, effective September 1, 1972, to add subparagraph .8 to Rule 16.4:

"Sec. 16.4 State Bar Grievance Administrator; Staff; Powers and Duties

The Board shall appoint an attorney to be State Bar Grievance Administrator. He shall serve at the pleasure of the Board. He shall: * * *

".8—In the absence of a specific complaint, initiate

---

[4] While the evidence presented by Markowitz's witnesses did cast doubt on Vicky's veracity, the testimony of Mr. C regarding the threat (Count II) and the testimony of the probate court attorney regarding the failure to disclose an interest in an adoption (Count III) were not contradicted or refuted in any way. On the two crucial findings, that Markowitz had threatened his client with litigation and had failed to disclose his interest in an adoption, Markowitz offered no evidence which the missing member would have heard had he been present. It is entirely true, however, that the missing member, by not participating in the decision on Count III, denied Markowitz the benefit of a third opinion.

investigation of misconduct of attorneys and prepare and serve in his own name Requests for Investigation, with the prior approval of one member of the Board."

Markowitz contends that Count III is defective because the request for investigation was signed by the Administrator before the adoption of the amendment adding subparagraph .8 authorizing the Administrator to serve requests for investigation in his own name. This technical defense is manifestly correct as the Administrator had no authority to initiate an investigation until the rule was changed. Before the rule was changed, the Administrator was limited to "[a]ssist[ing] *members of the public* in preparation of requests for investigation". State Bar Rule 16.4.3. (Emphasis supplied.)

The Administrator relies on State Bar Rule 16.33(c) which provides that "[n]o investigation or proceedings hereunder shall be held invalid by reason of any nonprejudicial irregularity, nor for any error not resulting in a miscarriage of justice".

This Court, in other contexts, has defined "miscarriage of justice" as having the same meaning as "prejudicial error" so that "the question of reversal is controlled by determination of whether the error was prejudicial".[5]

Markowitz claims that he was prejudiced because a letter from the probate court attorney to the State Bar Grievance Administrator, spelling out the charge that Markowitz did not disclose his interest in the Patricia X adoption when asked, was withheld until after the probate court attor-

---

[5] *People v Robinson,* 386 Mich 551, 562; 194 NW2d 709 (1972); *People v Mobley,* 390 Mich 57, 65; 210 NW2d 327 (1973); *People v Nichols,* 341 Mich 311, 322; 67 NW2d 230 (1954); *Soltar v Anderson,* 340 Mich 242, 244; 65 NW2d 777 (1954).

ney had completed his testimony at the hearing.[6]
Thus, Markowitz claims he was not adequately
informed of the true nature of the charge until
after the attorney had testified.

Although the gravamen of Count III was Mar-
kowitz's failure to disclose that the adopting par-
ents had paid him $500 and had agreed to pay him
an additional $500, neither the request for investi-
gation signed by the Assistant State Bar Grievance
Administrator nor the formal complaint, nor even
the amended formal complaint, filed after the
hearings were completed, charged Markowitz with
failure to disclose his interest in the adoption or
made any reference to the probate court attorney
or to a conversation between Markowitz and the
probate court attorney. In *State Bar Grievance
Administrator v Jackson,* 390 Mich 147, 155; 211
NW2d 38 (1973), we ruled that "[a]n attorney may
only be found guilty of misconduct as charged in
the complaint" and that a hearing panel errs in
finding an attorney "guilty for misconduct not
charged in the complaint".[7]

---

[6] Before the hearing Markowitz filed a motion to require production
of documents stating that at a meeting with the Administrator before
the formal complaint was filed he "was advised that a Request for
Investigation had been filed by someone from the Oakland County
Probate Court", that the name of the person requesting such investi-
gation was not given to him, nor were the contents of the request
made available to him, that his request for a copy of the request was
denied, that the request contains information necessary for his de-
fense and that he had a right to know his accuser. This motion was
denied. A week after the probate court attorney had completed his
testimony the hearing panel "sua sponte" reconsidered its order and
granted Markowitz's motion. He was advised that he would be given
an additional opportunity to present evidence and to cross-examine
again the probate court attorney.

The "Request for Investigation" received from the probate court
attorney could not properly be deemed to be *the* request for investiga-
tion, rather than the request signed by the Assistant State Bar
Grievance Administrator, because of the failure to serve on Markow-
itz the request received from the probate court attorney as required
by State Bar Rule 16.6.

[7] *Similarly, see State Bar Grievance Administrator v Freid,* 388

The State Bar Rules carefully spell out the procedures to be followed before a formal complaint may be filed. There are a number of safeguards designed to sift out meritless claims.[8] No formal complaint can properly be filed except in accordance with those procedures. Even now, under amended Rule 16.4.8, the Administrator may not serve a request for investigation in his own name except with "the prior approval of one member of the Board". If we were to validate proceedings on a formal complaint filed without a proper request for investigation, it would be tantamount to saying that the present limitation of prior approval of one member of the Board need not be observed. Even the present safeguard might fall into desuetude.

## VII

The discipline—two years' suspension—is, in our opinion, excessive.

Markowitz's threat to commence litigation (Count II) appears as an idle, impetuous threat. There is no evidence that Markowitz really intended to sue his client and, most importantly, he never did use his client's confidences "to the disadvantage of the client". The identity of the adopting parents was not revealed to the natural mother.

Although Markowitz has a good technical defense precluding the imposition of discipline under Count III, we note that his lack of candor during the interview with the probate court attorney is a serious matter. While this is not as offensive as

---

Mich 711, 715; 202 NW2d 692 (1972); *State Bar Grievance Administrator v Corace,* 390 Mich 419; 213 NW2d 124 (1973).

[8] *See* State Bar Rules 16.6–16.10.

would be a similar response to a judge, it, nevertheless, is below the standard of the profession. Markowitz's dissembling did not, again, result in imposition on client or court. The probate court became fully informed of the facts before the adoption was completed. A substitute guardian ad litem was appointed.

We have compared the discipline imposed in this and other recent cases. In *State Bar Grievance Administrator v Albert,* 390 Mich 234; 212 NW2d 17 (1973), a one-year suspension was imposed for accepting retainers and failing to perform services in five separate cases resulting in the loss of a right to appeal, a default judgment and dismissal of a complaint. In *State Bar Grievance Administrator v Sauer,* 390 Mich 449; 213 NW2d 102 (1973), a one-year suspension was imposed for filing a false tax return. In *State Bar Grievance Administrator v Moes,* 389 Mich 258; 205 NW2d 428 (1973), a one-year suspension was imposed for failure to do anything in a case resulting in the entry of a default judgment. In all these cases the attorneys' misconduct was not inchoate, as here, but resulted in actual prejudice and harm.

In *State Bar Grievance Administrator v Grossman,* 390 Mich 157; 211 NW2d 21 (1973), the lawyer was found to have lied to police officers and was reprimanded. Another case of lawyer prevarication is noted in the Synopses of Cases published by the Grievance Board; a 90-day suspension was imposed for falsely testifying at a grievance hearing on a matter involving a former partner and for failing to respond to a motion to dismiss resulting in a dismissal which the lawyer failed to report to his client or to attempt to rectify.

In reviewing the discipline imposed by the Grievance Board as set forth in its Synopses of

Cases, it appears that 1-year suspensions have been imposed for conduct involving conversion or commingling of funds of clients, forging the signature of a client, and failure to proceed with action resulting in dismissal or default judgment. Six-month suspensions have been imposed for income tax evasion, accepting retainers and failing to do anything resulting in loss of clients' rights, and the like. One to three-month suspensions have been imposed for such nefarious conduct as commingling funds, failure to take timely action resulting in loss of clients' rights, and the like. Reprimands have been imposed in innumerable cases where lawyers have failed to attend to their clients' business resulting in loss to the client.

We are mindful that Markowitz, in a prior disciplinary proceeding, was suspended for one month.

We would affirm the finding of professional misconduct but, in exercise of our power of superintending control (Rule 16.33[a], Rules Concerning the State Bar of Michigan), reduce the discipline to suspension for 120 days.

T. G. KAVANAGH, J., concurred with LEVIN, J.

SWAINSON, J., did not sit in this case.