*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH KROLCZYK and VIRGINIA
KROLCZYK,

UNPUBLISHED
April 4, 2019

Plaintiffs-Appellees,

v

No. 341016
Macomb Circuit Court
LC No. 2016-002885-CZ

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

Defendant-Appellant.

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this insurance-coverage dispute, defendant Citizens Insurance Company of the Midwest appeals as of right the trial court's orders denying defendant's motion for summary disposition, granting plaintiffs' motion for summary disposition, and entering judgment in plaintiffs' favor. Plaintiffs, Kenneth Krolczyk and Virginia Krolczyk, obtained an insurance policy from defendant for lost or stolen jewelry covering four specified pieces of jewelry. Plaintiffs filed a claim with defendant when the jewelry went missing. Defendant sought to avoid paying the claim due to plaintiffs' previous involvement in a bankruptcy proceeding several years before the policy was issued. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Between 1995 and 2002, plaintiffs purchased four pieces of jewelry, which were collectively appraised at $44,600. The relevant pieces included: (1) a platinum wedding ring purchased in 1995, appraised at $18,500; (2) a platinum pendant necklace bought in 1996, appraised at $9,600; (3) a platinum basal set ring purchased in 2002, appraised at $4,000; and (4) a platinum diamond ring with two sapphires bought in 2000, appraised at $12,500. In July of 2015, plaintiffs purchased a homeowner's insurance policy from defendant. For an additional

$825 premium, defendant individually scheduled each piece of jewelry at the appraised values.[1] In March of 2016, plaintiffs took a family trip. Shortly after returning home, plaintiffs discovered the four pieces of jewelry missing. On April 15, 2016, plaintiffs filed a claim with defendant for the "loss or theft" of the jewelry. The claim included the four pieces of jewelry noted above, at a claimed value of $44,600.

Defendant investigated the claim, and during the course of that investigation, defendant learned that plaintiff had filed for bankruptcy in June 2009. Notably, the bankruptcy was more than six years *before* obtaining the insurance policy at issue here, and nearly seven years *before* the loss of their jewelry and the resulting claim. Even though the jewelry had been appraised before the bankruptcy, perhaps as recently as a year previously, plaintiffs' bankruptcy schedules listed the jewelry at a combined value of only $1,000. As part of their bankruptcy, plaintiffs submitted to a creditors' examination, which was attended by them, their bankruptcy lawyer, a lawyer for one of their creditors, and the bankruptcy trustee. The trustee was the only person to ask questions throughout the examination. Although several questions were asked about the amounts of various debts and the values of various assets, no one inquired further about the jewelry. In July of 2009, the trustee recommended, and the bankruptcy court granted, a discharge of plaintiffs' debt.

As part of the instant claim, plaintiffs both submitted to examinations under oath conducted by defendant. Plaintiffs admitted that they had no precise explanation for telling the bankruptcy court their jewelry was worth $1,000 when they had appraisals for higher values, although Virginia Krolczyk noted that they relied on advice from their bankruptcy lawyer. In addition, plaintiffs indicated that the bankruptcy was personally and emotionally troubling to them, making it difficult for them to recall specific details about the way they completed their forms many years after the fact. Virginia Krolczyk also testified that plaintiffs' bankruptcy lawyer explained to them that their jewelry was subject to exemptions as wedding jewelry, and because it was custom-made or had sentimental value.

There is no dispute that the theft or loss of the jewelry constituted a loss under the policy defendant issued plaintiffs. Defendant does not assert, for example, that the loss or theft of the jewelry happened in any other manner than that claimed by plaintiffs. Indeed, defendant does not in any way assert that the claim is itself invalid. Rather, defendant relies solely on the bankruptcy discrepancy as its basis for refusing to pay the claim.

Plaintiffs sued defendant on August 15, 2016, asserting breach of contract and a violation of the Insurance Code of 1956, and seeking declaratory relief. After conducting discovery, the parties filed cross motions for summary disposition. Defendant's motion asserted that the doctrine of judicial estoppel prevented plaintiffs from claiming that the jewelry was worth $40,600 after having taken the position in the bankruptcy court that it was only worth $1,000, and also asserted that the bankruptcy deprived plaintiffs of an insurable interest in the jewelry. Plaintiffs responded that the discrepancy was explainable as a mistake or inadvertence instead of an intentional attempt to mislead the judicial system. They also argued that if defendant was

---

[1] In addition to two other pieces of jewelry which are not at issue in this appeal.

correct about the import of the bankruptcy proceeding, their creditors and the bankruptcy trustee are the aggrieved parties, not defendant, so defendant should not be relieved of its obligation under the insurance policy. It is undisputed that defendant, on several occasions, attempted to persuade plaintiffs' bankruptcy trustee to intervene or reopen the bankruptcy and the trustee declined each time.

In their motion for summary disposition, plaintiffs argued that they were entitled to judgment as a matter of law because the policy specifically scheduled and covered the jewelry at issue and there was no dispute that the loss occurred. Defendant argued that, notwithstanding the undisputed coverage and undisputed loss, plaintiffs had no insurable interest in the jewelry because of the bankruptcy. During the hearing on the parties' dispositive motions, the trial court initially expressed concern about the magnitude of the discrepancy. Nevertheless, the trial court also expressed concern that defendant was opportunistically trying to avoid its obligations by relying on the long-closed bankruptcy. The trial court concluded that plaintiffs' conduct in the bankruptcy could be explained by mistake or inadvertence. The trial court therefore denied defendant's motion and granted plaintiff's motion as to defendant's liability. The parties stipulated to the amount of damages, and the trial court entered judgment in plaintiff's favor in that amount. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012). The parties' motions were filed pursuant to MCR 2.116(C)(10), which tests the factual sufficiency of the complaint; summary disposition is properly granted if the entirety of the record evidence, when viewed in the light most favorable to the non-moving party, fails to establish a genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). Under the "clear error" standard, "the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472; 719 NW2d 19 (2006).

## III. JUDICIAL ESTOPPEL

The equitable doctrine of judicial estoppel " 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' " *Spohn*, 296 Mich App at 479, quoting *White v Wyndham Vacation Ownership, Inc*, 617 F3d 472, 476 (CA 6, 2010) (internal footnotes omitted). Our courts employ the "prior success model" of judicial estoppel, under which " 'a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.' " *Spohn*, 296 Mich App at 480, quoting *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). "Success" is not necessarily defined by prevailing in the prior proceeding, but rather by the tribunal's acceptance of the previous,

inconsistent position. *Spohn*, 296 Mich App at 480. Critically, however, "there must be some indication that the court in the earlier proceeding accepted that party's position *as true.*" *Id*. (emphasis added). The prior position must also be "wholly inconsistent" with the one taken in the present proceeding. *Id*.

Significantly, " '[t]he doctrine of judicial estoppel is to be applied with caution,' " *Opland v Kiesgan*, 234 Mich App 352, 363-364; 594 NW2d 505 (1999), quoting *Paschke*, 445 Mich at 523 (GRIFFIN, J., dissenting). "It is applied against litigants because of their 'deliberate manipulation' of the courts." *Opland*, 234 Mich App at 364, quoting *Helfand v Gerson*, 105 F3d 530, 536 (CA 9, 1997). In particular, judicial estoppel is an extraordinary remedy to prevent a miscarriage of justice, and it is not intended to defeat meritorious claims on a technicality. *Id*. In other words, courts must take at least as much care to avoid misuse of the judicial estoppel doctrine as the doctrine takes to avoid misuse of the judicial system.

The elements for determining whether to apply judicial estoppel in a bankruptcy setting were discussed by this Court in *Spohn*:

> [T]o support a finding of judicial estoppel, [a reviewing court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, [the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [the reviewing court] will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of [the plaintiff's] omitted claim. [*Spohn*, 296 Mich App at 480-481, quoting *White*, 617 F3d at 478.]

In *Spohn*, the defendant sought to apply judicial estoppel based on statements the plaintiff had made in the plaintiff's bankruptcy. The plaintiff had filed for bankruptcy knowing she had a workplace sexual harassment claim against the defendant. She did not, however, disclose the existence of that claim to the bankruptcy court. Later, after the dismissal of her bankruptcy case, she pursued her lawsuit against the defendant. This Court agreed with the defendant that judicial estoppel should bar the plaintiff's claim because of her prior, inconsistent assertion to the bankruptcy court that she had no potential causes of action. *Spohn*, 296 Mich App at 482-483. The bankruptcy court "adopted" that position by confirming her Chapter 13 bankruptcy plan, which omitted any mention of her tort claim. *Id*. at 483. There was no reasonable dispute that the plaintiff knew about the claim, and that she did nothing to amend her bankruptcy position to disclose it, precluding a finding of mistake or inadvertence. *Id*. A significant fact in *Spohn* was that the defendant was "aggrieved," because the claim the plaintiff failed to disclose involved the defendant. In the instant appeal, by contrast, there was no "claim" against Citizens when plaintiffs filed for bankruptcy—indeed, the bankruptcy began and finished years before the policy was even written.

-4-

Here, plaintiffs' assertion in bankruptcy that their jewelry was worth $1,000 is directly contrary to the current claim that it is worth over $40,000. The bankruptcy court did apparently accept (or at least did not appear to reject) that assertion. It is unclear, however, whether plaintiffs' $1,000 valuation had any practical consequences. Defendant asserts that the $1,000 valuation enabled plaintiffs to get a discharge of their debts with no liquidation of assets. The evidence, however, suggests otherwise. Neither the trustee nor the creditor's lawyer inquired into the jewelry at the creditors' exam. Significantly, the record is clear that defendant made many attempts to notify the bankruptcy trustee of the potential $40,000 in understated assets, and the bankruptcy trustee was uninterested in pursuing the issue. The level of disinterest shown by the trustee and creditor, both during the bankruptcy proceedings and after, implies that the jewelry was of minimal importance. Additionally, the lack of any conceivable harm whatsoever to Citizens, which charged plaintiffs for insuring the jewelry as appraised and in no way relied on anything that happened in the bankruptcy proceeding, does not in any way suggest that any miscarriage of justice has occurred in this matter.[2]

In contrast, we are not "left with the definite and firm conviction" that the trial court made a mistake in finding that a "mistake or inadvertence" occurred. Plaintiffs clearly knew, or should have known, that they had misrepresented the value of their jewelry. We are sympathetic to the fact that bankruptcy proceedings are distressing and embarrassing, but that is no excuse for lying to a court. Nevertheless, it is not clear that plaintiffs had any real motive for concealment, especially in light of testimony that plaintiffs' lawyer had advised them that the custom nature of the jewelry and the fact that it was wedding jewelry made the pieces exempt. Furthermore, although distress and embarrassment are not excuses, they can be explanations, and it is normal in any legal proceeding for parties to rely heavily on the advice and guidance of counsel. We express no view as to whether that advice was accurate, and the accuracy of that advice is wholly irrelevant to plaintiffs' motive. In summary, defendant ignores testimony that explains the discrepancy, and we cannot say that the trial court erred by giving that testimony credence.

---

[2] Our dissenting colleague accurately points out that harm to another litigant is not, strictly speaking, an "element" of judicial estoppel, except perhaps to the United States Supreme Court. See *New Hampshire v Maine*, 532 US 742, 775; 121 S Ct 1808; 149 L Ed 2d 968 (2001). However, as noted, the need to avoid a "miscarriage of justice" unambiguously *is* an element. See *Opland*, 234 Mich App at 364. The term "miscarriage of justice" has never been clearly defined by the courts in Michigan, but is generally used to refer to error that is both prejudicial and more than merely technical. See *In re Markowitz*, 393 Mich 6, 21; 222 NW2d 504 (1974); *People v Mateo*, 453 Mich 203, 212-215; 551 NW2d 891 (1996). Prejudicial error is generally understood to mean "harmful." The bankruptcy court clearly does not believe itself to have suffered harm, which we think is an assessment the bankruptcy court is in a better position to make than are we. Consequently, unless defendant can show some kind of harm, which our dissenting colleague appears to tacitly concede it cannot, defendant's invocation of judicial estoppel is simply the kind of gamesmanship that is explicitly forbidden. *Opland*, 234 Mich App at 364.

Notably, this is not a situation like *Spohn*, where a bankruptcy is filed by a debtor who conceals a known and existing claim, hoping to be able to bring it after the bankruptcy ends by avoiding having it liquidated by the trustee. Plaintiffs had no claim against defendant for the jewelry at issue, and indeed did not even obtain the policy until years after the bankruptcy ended. Defendant also attempts to assign "bad faith" to plaintiffs for not attempting to have their bankruptcy reopened, but the record is clear that defendant took that particular task into its own hands, and the bankruptcy trustee apparently saw no need to revisit the issue of the jewelry's value. Defendant has not presented any evidence that plaintiffs would have had any more success. We agree, therefore, with plaintiffs and the trial court that even if judicial estoppel might otherwise apply, plaintiffs' acts in the bankruptcy can be explained as "mistake or inadvertence," which, combined with the lack of possible harm to Citizens, prevents application of judicial estoppel. We respectfully believe our dissenting colleague misapprehends or misapplies the proper standard of review and fails to appreciate that as an error-correcting court, we are required to afford a certain amount of deference to the trial court's assessment of witness credibility. *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881); *Anderson v City of Bessemer City, NC*, 470 US 564, 574; 105 S Ct 1504, 1511-1512; 84 L Ed 2d 518 (1985). This is the case even where the applicable standard of review is otherwise de novo. *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986).

Equally importantly, we share the trial court's concern that defendant appears to be attempting to utilize the doctrine of judicial estoppel as a "a technical defense . . . to derail [a] . . . meritorious claim," *Opland*, 234 Mich App at 364, premised on a fortuitous, after-the-fact discovery of a years-old, long-closed bankruptcy that occurred years before defendant's policy was even in force. Defendant had appraised and individually scheduled each piece of the jewelry at issue, and it charged and collected an extra premium of over $800 for it. The record does not show that defendant was the slightest bit interested in plaintiffs' bankruptcy history or its potential impact on the availability for coverage when it initially issued the policy and collected an additional premium to cover plaintiffs' jewelry. Defendant only developed a sudden concern for the integrity of the bankruptcy proceeding when doing so appeared to be in its direct financial interest. Defendant was not in any way harmed by plaintiffs' $1,000 valuation in the bankruptcy proceeding, and neither did that valuation affect either the insurance policy or defendant's collection of a significant premium based on the $40,600 valuation. It appears that defendants are not trying to avert a miscarriage of justice so much as to create one.

The trial court properly refused to apply the doctrine of judicial estoppel under the circumstances.

## IV. INSURABLE INTEREST

Defendant also asserts that plaintiffs have no insurable interest in their jewelry because they lost title to it when they filed for Chapter 7 bankruptcy. See *Spohn*, 296 Mich at 485, citing 11 USC 541(a); see also *Young v Independent Bank*, 294 Mich App 141, 143; 818 NW2d 406 (2011). One must have an "insurable interest" to obtain coverage for the loss of personal property. *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009). Whether one has an insurable interest turns on "whether the insured would suffer a direct, pecuniary loss from the property's destruction." *AB Petro Mart, Inc v Ali T Beydoun Ins Agency, Inc*, 317 Mich App 290, 300; 892 NW2d 460 (2016).

Defendant asserts that plaintiffs' jewelry remained part of the bankruptcy estate because they underreported its value. A bankruptcy debtor must list all assets on the bankruptcy schedule, and any scheduled property not administered by the trustee is considered abandoned by the trustee back to the debtor. 11 USC § 521(a)(1); 11 USC § 554(c). In contrast, any assets *not* scheduled are still considered to be part of the bankruptcy estate but cannot be deemed abandoned even if the trustee is aware of them, and any property not administered or abandoned remains part of the bankruptcy estate. 11 USC 554(d); *Young*, 294 Mich App at 144, 147-148. Defendant apparently contends that plaintiffs' under-valuation of the jewelry is the equivalent of failing to schedule it; the theory, then, is that the jewelry was neither administered nor abandoned by the trustee and now remains part of the bankruptcy estate.

Defendant, however, provides no authority in support of the proposition that under-valuing an asset requires the asset to be deemed unscheduled. We decline to search for any. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Defendant likewise does not provide any authority for the proposition that the jewelry needed to be individually itemized to any particular degree. The fact is that plaintiffs *did* schedule their jewelry, the trustee did not administer the jewelry, and as a consequence, the jewelry was abandoned back to plaintiffs when the bankruptcy ended. The trustee and plaintiffs' creditors could have, but did not, investigate further during the creditors' exam. The trustee never asked plaintiffs to turn over their jewelry for appraisal or liquidation. Defendant erroneously asserts, therefore, that plaintiffs lack an insurable interest because the bankruptcy trustee has title to the jewelry, because plaintiffs have title to the jewelry. Thus, the trial court did not err in denying defendant summary disposition on this basis.

## V. CONCLUSION

For the foregoing reasons, we hold that the trial court properly declined to apply judicial estoppel to bar plaintiffs' claims. We also hold that there is no merit to defendant's contention that plaintiffs do not hold title to the jewelry because title has been retained by the bankruptcy trustee. The trial court therefore properly denied defendant's motion for summary disposition. There is no dispute that plaintiffs suffered a loss that is otherwise covered under the insurance policy defendant sold them, so the trial court properly granted plaintiffs motion for summary disposition and properly entered judgment in plaintiffs' favor based on the parties' damages stipulation.

Affirmed. Plaintiffs, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Amy Ronayne Krause