Bandstra, J.
 

 This case involves a mother and her daughter, bom in 1990, who have been trying to resolve the paternity of the child ever since. The trial court granted summary disposition to defendant in
 
 *355
 
 this action, the second paternity suit filed to resolve the question, on the basis of its conclusion that this result was required by an opinion of this Court in a prior paternity action. However, since this Court previously considered the matter, an amended judgment of divorce has established that the child was “bom out of wedlock.” Consequently, we conclude that the mother may maintain her action under the Paternity Act and, further, that she is not prevented from doing so under the principles of judicial estoppel.
 
 [1]
 
 We further conclude that the trial court erred in deciding that the daughter had no right to maintain her own action to determine paternity. Accordingly, we reverse the trial court order granting summary disposition to defendant and remand for further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 When plaintiff Melonie Opland (Opland) gave birth to her daughter, plaintiff Stephanie Craft (Stephanie) in 1990, Opland was married to, but separated from, Jeffrey Craft (Craft). Shortly thereafter, Opland filed for divorce. Although she now claims that Stephanie was not Craft’s child, she asserted then that Stephanie was.
 
 [2]
 
 Craft did not contest this assertion, and a judg
 
 *356
 
 merit of divorce was entered in 1991 (the original divorce judgment) designating Craft as Stephanie’s father.
 

 A year later, in September 1992, Opland filed a paternity action against defendant, Gregory Kiesgan (Kiesgan), designating Opland as the only plaintiff. The trial court ordered Kiesgan to submit to a blood test, and Kiesgan appealed this ruling to this Court, on leave granted. In an unpublished opinion, a panel of this Court determined that Opland did not have standing under the Paternity Act, MCL 722.711
 
 el seq.)
 
 MSA 25.491
 
 el seq.,
 
 because there had been no prior court determination that Stephanie was not the issue of Opland’s marriage to Craft, as required by
 
 Girard v Wagenmaker,
 
 437 Mich 231, 241-243; 470 NW2d 372 (1991).
 
 Craft v Kiesgan,
 
 unpublished opinion per curiam of the Court of Appeals, issued October 24, 1995 (Docket No. 160586).
 
 [3]
 
 Further, the panel determined that Opland’s claim was barred by the doctrine of judicial estoppel under
 
 Paschke v Retool Industries,
 
 445 Mich 502, 509-510; 519 NW2d 441 (1994), because Opland had successfully asserted in the prior divorce proceeding that Stephanie was Craft’s daughter, an assertion that was wholly inconsistent with her paternity action claim that Stephanie was Kiesgan’s daughter. As a result of that ruling by this Court, Opland’s first paternity action against Kiesgan was dismissed.
 

 Shortly thereafter, Opland and Craft returned to the divorce court, which entered a consent order modifying the original divorce judgment. This judgment (the
 
 *357
 
 amended divorce judgment) was based on stipulations by Opland and Craft that Stephanie was conceived when the parties were separated and contemplating divorce, that Craft “had no access” to Opland during the time of Stephanie’s conception, that except “for some period of time,” Craft had never paid child support for Stephanie, that this approach to child support was with the agreement of Opland and with the knowledge of the friend of the court, and that another man was Stephanie’s father. The amended divorce judgment further stated that, on the basis of the stipulations of the parties, the court determined that Stephanie was not the issue of the marriage between Opland and Craft, although she was conceived and bom during that marriage. Accordingly, the amended divorce judgment deleted reference to Stephanie in its provisions regarding custody and support obligations.
 

 On June 21, 1996, the same date that the amended divorce judgment was entered, Opland filed the present paternity action. In contrast to the prior paternity action, both Opland and Stephanie are listed as plaintiffs, with Opland acting as next friend of Stephanie. The case was assigned to the same trial court judge whose decision ordering Kiesgan to undertake a blood test had been reversed by this Court in 1995. The trial court granted summary disposition to Kiesgan, basically concluding that this Court’s prior decision required that result, notwithstanding the intervening amendment of the judgment of divorce. The trial court reasoned that although the caption of the complaint had changed, Opland “is the driving force behind . . . the present action” just as she was behind the prior paternity suit and that “the substantive facts have not changed since the prior paternity action was
 
 *358
 
 dismissed.” Further, the trial court reasoned that Opland was seeking equitable relief, which she could not have under the “clean hands” doctrine, having pursued Craft for child support during the same years she was pursuing a paternity action against Kiesgan. The trial court’s order granting summary disposition for Kiesgan and dismissing the complaint in the second paternity action is at issue here.
 

 ANALYSIS
 

 In granting summary disposition to Kiesgan, the trial court did not separately analyze the claims brought by Opland and Stephanie as individual plaintiffs. We find it necessary to do so.
 

 MELONIE OPLAND
 

 PATERNITY ACT STANDING
 

 As noted earlier, our Court previously ruled that Opland did not have standing under the Paternity Act because there had been no prior court determination to rebut the presumption that Stephanie, bom and conceived during the Opland/Craft marriage, was the issue of that marriage. See MCL 722.711; MSA 25.491 and
 
 Girard, supra
 
 at 240-243. Although Kiesgan criticizes Opland for failing to appeal this earlier ruling, we conclude that it was correct and that there would have been no basis for appeal. We further conclude that Opland properly went back to the divorce court for a determination that Stephanie was not an issue of the marriage in order to remove the impediment to standing identified by our Court’s previous decision.
 

 This is the procedure our Court has recommended as appropriate to resolve the
 
 Girard
 
 standing requirement. In
 
 Dep’t of Social Services v Baayoun,
 
 204
 
 *359
 
 Mich App 170, 176; 514 NW2d 522 (1994), we noted “that the mother may secure a determination that her child was not an issue of the marriage through postjudgment divorce proceedings.” Similarly in
 
 Dep’t of Social Services v Carter,
 
 201 Mich App 643, 649; 506 NW2d 603 (1993), we stated: “After obtaining an amended judgment of divorce that provided that the minor child was not the issue of the marriage, plaintiffs then could refile the paternity action against defendant.” Although these passages are dicta, we find the approach recommended to be an appropriate response to the
 
 Girard
 
 prior-court-determination requirement. That requirement is one of the “limitations on the accessibility to the Paternity Act.”
 
 Girard, supra
 
 at 240. It presents a hurdle to litigants in actions involving children bom during a marriage by requiring that, before an action proceeds, a judicial determination must be made that the child is nonetheless not the issue of that marriage.
 
 Id.
 
 at 240-248. To impose a prior-court-determination requirement and then prohibit potential Paternity Act litigants from seeking that determination would convert the hurdle into an absolute bar.
 

 We further conclude that, although Kiesgan casts aspersions on it as “an alleged consent order,”
 
 [4]
 
 the amended divorce judgment constituted a prior court determination sufficient to satisfy the
 
 Girard
 
 requirement. Although it was a consent judgment, the
 
 *360
 
 amended divorce judgment stated that the court made a factual determination that Stephanie was not the issue of the marriage between Opland and Craft. This was based on the uncontested stipulation of Opland and Craft that although they were married at the time Stephanie was conceived, they were separated at that time and had no opportunity for any sexual relationship. Kiesgan suggests no reason the court should have disbelieved Opland and Craft, the only persons with knowledge of these matters. We conclude that the amended divorce judgment was properly entered and that it constituted a sufficient prior determination under
 
 Gerard
 
 to allow Opland to proceed with her paternity action.
 
 [5]
 

 Kiesgan cites
 
 Hackley v
 
 Hackley, 426 Mich 582; 395 NW2d 906 (1986), and
 
 Hawkins v Murphy,
 
 222 Mich App 664; 565 NW2d 674 (1997), apparently in support of an argument
 
 [6]
 
 that, the divorce court having previously entered a judgment indicating that Stephanie was Craft’s daughter, the amended divorce judgment determining otherwise was improper. We find these precedents to be inapposite. Neither case involved the situation here, where both parties to the divorce, in securing an amendment to the divorce judgment, disavowed their original representations regarding the
 
 *361
 
 paternity of Stephanie and stipulated that Craft was not her father.
 
 Hockley
 
 and
 
 Hawkins
 
 did not involve this kind of agreement between the mother and the putative father. In
 
 Hackley, supra
 
 at 600-601, the putative father, over the protestations of his former wife and almost nine years after the divorce decree establishing his paternity had been entered, sought to disavow a child bom during the marriage. The opposite situation was presented in
 
 Hawkins, supra
 
 at 666-667, where the mother contested the putative father’s paternity and sought, over his objections, to amend a judgment of divorce and set aside an order of filiation that had established that paternity.
 
 Hackley
 
 and
 
 Hawkins
 
 thus applied res judicata principles to protect a party from amendment of a judgment over that party’s objections. These precedents are inapplicable to this case, where both parties are in agreement that the original divorce judgment was based on false information and both parties acquiesce to a modification of that judgment to reflect the trae facts.
 
 [7]
 

 JUDICIAL ESTOPPEL
 

 In Opland’s prior paternity suit, brought before the amended judgment of divorce was entered, this Court held that judicial estoppel applied to bar the suit. We conclude that this impediment to Opland bringing a
 
 *362
 
 paternity action has been removed as a result of the amended divorce judgment.
 

 The judicial estoppel doctrine has most recently been discussed by our Supreme Court in
 
 Paschke v Retool Industries,
 
 445 Mich 502, 509-510; 519 NW2d 441 (1994):
 

 “Under this doctrine, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding.” Under the “prior success” model, the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party’s position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent. [Citations and emphasis omitted.]
 

 See, also,
 
 Lichon v American Universal Ins Co,
 
 435 Mich 408, 416-417; 459 NW2d 288 (1990). Applying this rule, a panel of this Court reasoned that, because Opland had asserted that Craft was Stephanie’s father in the divorce proceedings, it was inconsistent for her to assert in the prior paternity action that Kiesgan is Stephanie’s father. While we agree that this was a proper application of judicial estoppel in light of the original divorce judgment, the question we consider now is whether judicial estoppel continues to bar Opland’s paternity suit. Specifically, Opland has changed her position in the divorce proceedings, the prior court action that formed the basis for the use of judicial estoppel to bar her from maintaining her paternity suit. The position she has now taken in the divorce proceedings, i.e., that Craft is not the father of Stephanie, is no longer inconsistent with the position she takes in this paternity suit where she alleges
 
 *363
 
 that Kiesgan is the father. Under these circumstances, we must decide whether the doctrine of judicial estoppel properly applies as a continuing bar to the paternity suit.
 
 [8]
 

 In the absence of any available precedents on point,
 
 [9]
 
 we consider whether the general purposes of judicial estoppel will be advanced by its application to this case. “The doctrine of judicial estoppel is to be
 
 *364
 
 applied with caution.”
 
 Paschke, supra
 
 at 523 (Griffin, J., dissenting). Accord
 
 Lowery v Stovall,
 
 92 F3d 219, 224 (CA 4, 1996) (“Because of the harsh results attendant with precluding a party from asserting a position that would normally be available to the party, judicial estoppel must be applied with caution.”)
 
 [10]
 
 Judicial estoppel is an “ ‘extraordinaiy remed[y] to be invoked when a party’s inconsistent behavior will otherwise result in a miscarriage of justice.’ ... It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims . . . .”
 
 Ryan Operations G P v Santiam-Midwest Lumber Co,
 
 81 F3d 355, 365 (CA 3, 1996), quoting
 
 Oneida Motor Freight, Inc v United Jersey Bank,
 
 848 F2d 414, 424 (CA 3, 1988) (Stapleton, J., dissenting). It is applied against litigants because of their “deliberate manipulation” of the courts.
 
 Helfand v Gerson,
 
 105 F3d 530, 536 (CA 9, 1997). Courts apply judicial estoppel to prevent a party “ ‘from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.’ ”
 
 Griffith v Wal-Mart Stores, Inc,
 
 135 F3d 376, 380 (CA 6, 1998), quoting
 
 Teledyne Industries, Inc v Nat’l Labor Relations Bd,
 
 911 F2d 1214, 1218 (CA 6, 1990). The doctrine “is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.”
 
 Levinson v United States,
 
 969 F2d 260, 264 (CA 7, 1992).
 

 
 *365
 
 Because the purpose of judicial estoppel is to protect the integrity of the judicial process, it is “ ‘an equitable doctrine invoked by a court at its discretion.’ ”
 
 McNemar v Disney Store, Inc,
 
 91 F3d 610, 616-617 (CA 3, 1996), quoting
 
 Yanez v United States,
 
 989 F2d 323, 326 (CA 9, 1993). In deciding whether to apply judicial estoppel, courts consider “ ‘each case . . . upon its own particular facts and circumstances.’ ”
 
 McNemar, supra
 
 at 617, quoting
 
 Scarano v Central R Co of New Jersey,
 
 203 F2d 510, 513 (CA 3, 1953). Accord, e.g.,
 
 Johnson v Oregon,
 
 141 F3d 1361, 1368 (CA 9, 1998) (“judicial estoppel is an equitable doctrine, invoked by a court at its own discretion, and driven by the specific facts of a case”).
 

 As noted in
 
 Paschke,
 
 the “prior success” model of judicial estoppel adopted in Michigan has as its focus “the danger of inconsistent rulings.”
 
 Paschke, supra
 
 at 510, n 4. The “prior success” rule, the rule “that requires acceptance by the earlier tribunal of the litigant’s statements” has been inteipreted as “limitfing] the doctrine of judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain.”
 
 Simon v Safelite Glass Corp,
 
 128 F3d 68, 72 (CA 2, 1997). The prior success rule limits the application of judicial estoppel to a situation where a party attempts to invoke the authority of a second tribunal “to override a bargain made” with a prior tribunal.
 
 Wang Laboratories, Inc v Applied Computer Sciences, Inc,
 
 958 F2d 355, 358 (Fed Cir, 1992).
 

 Applying these general principles to the specific facts and circumstances of this case, we first consider Opland’s decision to maintain initially in the divorce court that Craft was the father of Stephanie. We cer
 
 *366
 
 tainly do not condone that decision. However, we do not conclude that Opland was thereby attempting to coldly, deliberately, or cynically manipulate the courts, hoping to prevail on one theory there and on another theory in a paternity action. Further, the danger of misuse of the courts with regard to the issue of paternity is minimal because that issue is susceptible to definitive resolution through dna testing.
 

 More importantly, we do not conclude that the purpose of judicial estoppel as it has been described by our Supreme Court in
 
 Paschke
 
 would be advanced by applying it to this case. If Opland is allowed to proceed with her paternity action, there is no “danger of inconsistent rulings” now that she has consented to an amended divorce judgment specifying that Craft is not the father.
 
 Paschke, supra
 
 at 510, n 4. That current divorce judgment ruling would be consistent with either finding that might be made in this paternity action, i.e., that Kiesgan is or is not Stephanie’s father. In the absence of any danger of any inconsistent rulings and recognizing that the judicial estoppel doctrine should be applied with caution, we decline to apply it to this case. To do so would provide Kiesgan “a technical defense” by which he will “derail potentially meritorious claims” brought by Opland in this paternity action, an “unduly harsh and inequitable” result.
 
 Ryan Operations, supra
 
 at 365.
 
 [11]
 

 
 *367
 
 STEPHANIE CRAFT
 

 The Paternity Act allows only “a child who became 18 years of age after August 15, 1984 and before June 2, 1986” to bring a paternity action. MCL 722.714(1); MSA 25.494(1);
 
 Phinisee v Rogers,
 
 229 Mich App 547, 555-556; 582 NW2d 852 (1998). Because Stephanie does not fit this age classification, she does not have standing to bring a paternity action under the terms of the statute.
 
 [12]
 
 However, this Court has determined that the Equal Protection Clauses of both the United States Constitution, US Const, Am XIV, and the Michigan Constitution, Const 1963, art 1, § 2, are violated by a legislative scheme allowing a minor child bom in wedlock the right to bring a paternity suit while denying that right to a minor child bom out of wedlock.
 
 Spada v Pauley,
 
 149 Mich App 196, 200, 203-206; 385 NW2d 746 (1986). As a remedy, this Court concluded that “the traditional equitable jurisdiction of the circuit court may be invoked to provide [a minor child bom out of wedlock] with a forum for his [or her] claims.”
 
 Id.
 
 at 206.
 
 [13]
 
 See, also,
 
 Phinisee, supra
 
 at
 
 *368
 
 555-558. Accordingly, the trial court incorrectly determined that Stephanie had no right to bring this paternity action and improperly granted summary disposition to Kiesgan on that basis.
 
 [14]
 

 We reverse the order of the trial court dismissing plaintiffs’ claims against Kiesgan and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.
 

 [1]
 

 Although not raised by the parties, we note that our decision in this case does not conflict with this Court’s prior decision in
 
 Craft v Kiesgan,
 
 unpublished opinion per curiam of the Court of Appeals, issued October 24, 1995 (Docket No. 160586), under the law of the case doctrine. Because the facts have not remained materially the same, we are not bound by this Court’s prior decision, and the law of the case doctrine does not apply.
 
 Driver v Hanley (After Remand),
 
 226 Mich App 558, 565; 575 NW2d 31 (1997).
 

 [2]
 

 The divorce complaint also sought an injunction against Craft to prevent him from physically abusing Opland, and Opland claims she was afraid to reveal that Stephanie was not Craft’s child at the time of the divorce.
 

 [3]
 

 At the time the prior paternity action was brought, Opland was still using her married name.
 

 [4]
 

 Because Kiesgan does not cite any authority or elaborate any argument why the amended divorce judgment does not constitute a prior court determination sufficient to satisfy the
 
 Girard
 
 requirement, he has waived this argument.
 
 Weiss v Hodge (After Remand),
 
 223 Mich App 620, 637; 567 NW2d 468 (1997);
 
 Meagher v Wayne State Univ,
 
 222 Mich App 700, 718; 565 NW2d 401 (1997). In addition, however, we conclude that Kiesgan’s argument has no merit.
 

 [5]
 

 We also note that the trial court’s determination regarding this issue was shortly thereafter corroborated by dna blood testing that established that Craft is not Stephanie’s father. Kiesgan does not contest that scientific finding.
 

 [6]
 

 Kiesgan’s brief is confusing. If and to the extent that he is arguing that we are bound by the decision of the prior panel under res judicata or collateral estoppel principles, we reject this argument. As the remainder of our analysis illustrates, the question presented to the previous panel is not the question we face today, the amended divorce judgment having been entered in the interim. Accordingly, res judicata and collateral estoppel principles are inapplicable.
 

 [7]
 

 In addition, if and to the extent that Kiesgan is arguing that Opland is bound by the conclusion reached in the original divorce judgment, i.e., that Craft fathered Stephanie, under principles of res judicata or collateral estoppel, we reject that argument. Kiesgan cannot assert res judicata or collateral estoppel because he was not a party to or the privy of a party to the divorce action. See
 
 Energy Reserves, Inc v Consumers Power Co,
 
 221 Mich App 210, 215-216; 561 NW2d 854 (1997) (res judicata);
 
 Akyan v Auto Club Ins Ass’n (On Rehearing),
 
 208 Mich App 271, 277; 527 NW2d 63 (1994) (collateral estoppel).
 

 [8]
 

 When this Court considered the doctrine of judicial estoppel in the prior paternity suit, it did not consider whether application of that doctrine was barred by the fact that Kiesgan was not a party to the Opland/Craft divorce proceeding. Although some jurisdictions employ a “party or privy” requirement for application of judicial estoppel, the majority rule is otherwise.
 
 Ryan Operations G P v Santiam-Midwest Lumber Co,
 
 81 F3d 355, 360 (CA 3, 1996). Because the purpose of the doctrine of judicial estoppel is to protect the judicial integrity of the courts rather than the rights of parties, it is properly employed to protect judicial integrity without imposing a “party or privy” requirement. Further, it appears that this approach was adopted by our Supreme Court in
 
 Lichon.
 
 Having determined that equitable estoppel could not apply, the party or privy requirement not being satisfied, the Supreme Court went on to examine the judicial estoppel doctrine nonetheless.
 
 Lichon, supra
 
 at 416. In so doing, the Court relied on
 
 Edwards v Aetna Life Ins Co,
 
 690 F2d 595, 598 (CA 6, 1982), a precedent that concluded that judicial estoppel could properly apply without satisfaction of the party or privy requirement.
 

 [9]
 

 Since
 
 Lichon
 
 and
 
 Paschke
 
 were decided, our Court has often considered whether the position advanced by a litigant was inconsistent with that advanced in a prior proceeding for purposes of judicial estoppel. See, e.g.,
 
 Tranker v Figgie Int'l, Inc (On Remand),
 
 231 Mich App 115, 121-122; 585 NW2d 337 (1998);
 
 Driver v Hanley (After Remand),
 
 226 Mich App 558, 562-563; 575 NW2d 31 (1997);
 
 Auto-Owners Ins Co v Harvey,
 
 219 Mich App 466, 474-475; 556 NW2d 517 (1996);
 
 Horn v Dep’t of Corrections,
 
 216 Mich App 58, 63-64; 548 NW2d 660 (1996);
 
 Akyan v Auto Club Ins Ass’n (On Rehearing),
 
 208 Mich App 271, 275-276; 527 NW2d 63 (1994). These precedents are not helpful here because there is little doubt that Opland’s position in this action where she alleges that Kiesgan is Stephanie’s father is inconsistent with the position she first advanced in the divorce litigation but is not inconsistent with the position she advanced in securing the amended divorce judgment. We were able to find no precedents where the question at issue here, i.e., the effect of a change of position in the prior proceedings for judicial estoppel purposes, was considered.
 

 [10]
 

 We turn to federal precedents to supplement the available Michigan precedents in light of our Supreme Court’s reliance on federal precedents in its discussions of the judicial estoppel doctrine. See, e.g.,
 
 Paschke, supra
 
 at 509 (Mallett, J.), 622-523 (Griffin, J., dissenting);
 
 Lichon, supra
 
 at 416.
 

 [11]
 

 A similar conclusion might be reached under an analysis of the
 
 Paschke
 
 requirement that the doctrine of judicial estoppel applies only against a party that “unequivocally asserted” a position, inconsistent with a position later asserted, in a previous action. Paschke,
 
 supra
 
 at 509. Arguably, Opland did not unequivocally assert that Craft was the father of Stephanie in the divorce proceedings, having sought an amended divorce judgment to the opposite effect. However, we question whether the “unequivocally asserted” requirement makes any sense in a jurisdiction, like Michigan, that has adopted the “prior success” model of judicial
 
 *367
 
 estoppel. See
 
 Paschke, supra
 
 at 510. That model of the doctrine is “tailored to allow for alternative pleadings in the same or different proceedings.”
 
 Id.
 
 at 510, n 4. In other words, even though a party does not assert a single position unequivocally in a prior proceeding, the doctrine of judicial estoppel can apply with respect to the position upon which success was achieved. In any event, we need not consider the viability of the “unequivocally asserted” requirement or its application to the facts of this case because we have concluded that the judicial estoppel doctrine is not properly applied here for other reasons.
 

 [12]
 

 We reject Stephanie’s argument that MCL 722.714(7); MSA 25.494(7) provides her standing. This subsection merely allows a minor otherwise qualified to bring an action (e.g., a minor mother) to do so without the necessity of a next friend or guardian ad litem absent an order of the circuit judge.
 

 [13]
 

 This language may have been the genesis of the lower court’s reasoning that Opland was seeking equitable relief in this action. This reasoning was incorrect; as explained above, Opland has the right to bring a pater
 
 *368
 
 nity action under the Paternity Act. Stephanie’s action falls under the “equitable jurisdiction” of the courts. However, any concerns the trial court may have had about Opland under the “clean hands” doctrine are not applicable to Stephanie. She did not participate in Opland’s decisions to seek the original divorce judgment with its provisions that Craft was Stephanie’s father and obligated to support her.
 

 [14]
 

 Kiesgan has not raised any argument that Stephanie’s cause of action is barred by the doctrines of collateral estoppel, res judicata, or judicial estoppel. Kiesgan’s appellate brief attempts to apply these doctrines only against Opland as discussed above. We further note that our Court has recently rejected an argument that the doctrine of res judicata should be applied to prevent a child from bringing a paternity action as a result of a prior action brought by the child’s mother,
 
 Phinisee, supra
 
 at 552-554, for reasons that might equally apply to the collateral estoppel and judicial estoppel doctrines.