*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH KROLCZYK and VIRGINIA
KROLCZYK,

UNPUBLISHED
April 4, 2019

Plaintiffs-Appellees,

v

No. 341016
Macomb Circuit Court
LC No. 2016-002885-CZ

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

Defendant-Appellant.

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

JANSEN, J. (*dissenting*).

Respectfully, I disagree with the majority that plaintiffs' acts in the bankruptcy court can be explained as a "mistake or inadvertence." I believe the trial court erroneously refused to apply the doctrine of judicial estoppel. Because I would vacate the trial court's order granting summary disposition in favor of plaintiffs, and likewise vacate the judgment entered in favor of plaintiffs, and grant defendant's motion for summary disposition, I dissent.

The facts of this case are undisputed. Plaintiffs owned four pieces of fine jewelry. Prior to their bankruptcy, the pieces were collectively appraised at $30,000. In 2009, plaintiffs filed for Chapter 7 bankruptcy, and filed a signed schedule of itemized assets. Plaintiffs' claim that on advice from their bankruptcy attorney, they indicated the four pieces of jewelry at issue here had a collective value of $1,000, despite having previously obtained appraisals valuing the jewelry at $30,000. Neither the bankruptcy trustee nor the creditor's attorney questioned plaintiffs' representation regarding the value of the jewelry, and the bankruptcy court ultimately discharged approximately $442,575 of plaintiffs' debt.

In July 2015, plaintiffs purchased a homeowner's insurance policy from defendant. Plaintiffs also had the jewelry reappraised in order to purchase a rider to the policy to cover each of the four pieces of jewelry at issue here. For an additional $825, defendant individually scheduled each piece of jewelry at their post-bankruptcy appraised values. The jewelry value of the four pieces cumulatively totaled $44,600. In March 2016, plaintiffs traveled to Las Vegas,

Nevada to attend their son's karate tournament. Apparently, plaintiffs traveled to Las Vegas with the jewelry at issue here, and left it there. After returning home to Michigan, plaintiffs realized that they had left the jewelry in their hotel room on a table or in the safe. On April 15, 2016, plaintiffs filed a claim with defendant for "loss or theft" of the jewelry, and claimed a value of $44,600. After defendant investigated plaintiffs' claim and refused to pay, plaintiffs initiated the instant action.

On appeal, defendants first argue that the trial court erroneously denied its cross-motion for summary disposition. In the trial court, and in this Court, defendants argue that the doctrine of judicial estoppel prevented plaintiffs from successfully taking the position in their bankruptcy that their jewelry was worth $1,000, and then taking the position in this lawsuit that their jewelry was worth over $40,000. I agree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Allison v AEW Capital Management, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The moving party has the initial burden of supporting its position with affidavits, depositions, admissions, or other documentary evidence. *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). The burden then shifts to the opposing part to show, using evidentiary materials, that a genuine issue of material fact exists to preclude summary disposition. MCR 2.116(G)(4); *Bronson Methodist Hosp*, 295 Mich App at 441. The trial court must consider the documentary evidence in a light most favorable to the nonmoving party. *Joseph*, 491 Mich at 206. A genuine issue of material fact exists when, giving the nonmoving party the benefit of reasonable doubt, an issue remains upon which reasonable minds could differ. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). This Court reviews for clear error a trial court's findings of fact regarding the doctrine of judicial estoppel, and de novo determinations regarding the applicability of the doctrine of judicial estoppel. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012).

> "Judicial estoppel precludes a party from adopting a legal position in conflict with a position taken earlier in the same or related litigation. The doctrine protects the integrity of the judicial and administrative processes." *Ford Motor Co v Pub Serv Comm*, 221 Mich App 370, 382-383; 562 NW2d 224 (1997). This Court has held that "[u]nder the doctrine of judicial estoppel, a party that has unequivocally and successfully set forth a position in a prior proceeding is estopped from setting forth an inconsistent position in a later proceeding." *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 672; 760 NW2d 565 (2008). For the doctrine to apply, the party's position in the prior proceeding must have been " 'wholly inconsistent' " with the same party's position in the later proceeding. [*Szyszlo*, 296 Mich App at 51,] quoting *Paschke v Retool Indus*, 445 Mich 502, 510; 519 NW2d 441 (1994). The doctrine was developed to prevent parties from playing " 'fast and loose' with the legal system." *Paschke*, 445 Mich at 509 (citation omitted). [*Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014).]

-2-

More than a mere assertion that an opposition's positions are inconsistent is required to invoke the doctrine of judicial estoppel; it must be clear that the court in the earlier proceeding adopted the inconsistent position as true. *Paschke*, 445 Mich at 510.

"The doctrine of judicial estoppel is to be applied with caution." *Opland v Kiesgan*, 234 Mich App 352, 363-364; 594 NW2d 505 (1999) (quotation marks and citation omitted.)

> Judicial estoppel is an extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. . . .It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. . . . [*Opland*, 234 Mich App at 364 (quotation marks and citation omitted).]

The doctrine is applied "against litigants because of their deliberate manipulation of the courts." *Id*. (quotation marks and citation omitted.)

Here, the plaintiffs unequivocally and successfully took the position in bankruptcy that the value of the jewelry was $1,000. Despite the fact that the bankruptcy trustee and the creditor's attorney never questioned the value of the jewelry, the trial court clearly accepted the value as represented by plaintiffs, as evidenced by the bankruptcy court having discharged $442,575 of plaintiff's debt. Now, plaintiffs are asking the trial court, and this Court, to accept their position that the jewelry is worth over $44,600, a position that is clearly contrary to plaintiffs' previously asserted position that the value of the jewelry was only $1,000. I believe that plaintiffs should be judicially estopped from now claiming that the same jewelry is worth tens of thousands of dollars more in an effort to collect from defendant.

The majority takes the position that plaintiffs' misrepresentation to the bankruptcy court can be explained as "mistake or inadvertence," which prevents the application of judicial estoppel. Similarly, the majority writes that "it is not clear that plaintiffs had any real motive for concealment, especially in light of testimony that plaintiffs' lawyer had advised them that the custom nature of the jewelry and that fact that it was wedding jewelry made the pieces exempt." I disagree. Based on appraisals conducted before the bankruptcy, plaintiff that the value of the jewelry was at least $30,000, yet personally signed a schedule of assets indicating that the four pieces were only worth $1,000. Being distressed or embarrassed over a bankruptcy is not an excuse or an explanation for grossly misstating the value of jewelry. Although plaintiffs' claim that they relied on the advice of their bankruptcy attorney in valuing the jewelry at $1,000, it was plaintiffs who had to sign the schedule of assets – not their attorney. Moreover, there is no affidavit in the record before us from plaintiffs' bankruptcy attorney indicating that it was, in fact, on his advice to under value the jewelry on plaintiffs' schedule of assets, and why that advice was given. Without an affidavit, we can only rely solely on plaintiffs' representation, and plaintiffs' have admitted in their depositions in this case that their memories of the bankruptcy are hazy because it was a traumatic time in their lives. Further, in his deposition in this case, Kenneth was asked whether he had turned over the appraisals for the jewelry to his bankruptcy attorney, and he responded, "[n]ot that I'm aware of." Finally, plaintiffs did have a motive to misrepresent the value of the jewelry: to keep the jewelry as assets, and to have their debt discharged without having to liquidate any assets, to the detriment of their creditors.

The majority also notes that defendant will suffer no "conceivable harm" by paying out the insurance claim. However, harm to defendant is not a required element to apply the doctrine of judicial estoppel. The doctrine of judicial estoppel is designed to present plaintiff from manipulating Michigan courts. It does not require actual, demonstrable harm to any party. Regardless, to allow plaintiffs to circumvent the system does cause defendant harm: defendants become liable to plaintiffs in the amount of $44,600 due to the loss of the jewelry when they otherwise may not have issued the rider to the insurance policy had the proper disclosures been made. Where defendants could simply return the $825 premium paid by plaintiffs, it seems that requiring defendants to reimburse plaintiffs the full $44,600 does constitute a tangible harm to defendant.

For those reasons, I believe the trial court erroneously refused to apply the doctrine of judicial estoppel. Based on the foregoing, I would vacate the trial court's order granting summary disposition in favor of plaintiffs, vacate the judgment entered in favor of plaintiffs, and grant defendant's motion for summary disposition.

/s/ Kathleen Jansen