*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DENISE D. MAXWELL,

        Plaintiff-Appellant,

v

DANIEL J. ZAWLOCKI,

        Defendant-Appellee.

UNPUBLISHED
August 24, 2023

No. 362183
Genesee Circuit Court
LC No. 19-113382-CK

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's declaratory judgment dismissing her lawsuit on the basis of judicial estoppel. We affirm the trial court's ruling.

## I. FACTS

The parties became romantically involved in 1998, began cohabitating in 1999, and had a child together in 2000. The crux of this dispute is a house that the two constructed while still romantically involved. Plaintiff alleged that, sometime in 2001 or 2002, she and defendant decided to combine their assets, purchase land, and construct a home in order to eventually sell it. Plaintiff alleged this was a joint venture agreement between her and defendant. The property was located at "75 Chateau Du Lac," which both parties on appeal designate as "CDL." Defendant purchased CDL, and the parties hired a contractor to construct a house on the property.

In 2007, both parties filed separately for bankruptcy but retained the same attorney to represent them in the bankruptcy proceedings. Defendant filed under Chapter 13 of the Bankruptcy Code, and plaintiff filed under Chapter 7. Although both parties listed CDL as their residence, plaintiff did not disclose in her bankruptcy petition any interest in CDL. Defendant listed in his separate bankruptcy petition an ownership interest in CDL. Plaintiff disclosed no assets, and her bankruptcy was completed without any disbursements to creditors. Plaintiff was not listed as a creditor in defendant's petition, and she filed no claim for any interest in CDL in defendant's bankruptcy proceeding. Around the time of these bankruptcy proceedings, the parties grew estranged, but it appears they decided to reside in CDL in order to maintain stability for their minor child. Plaintiff alleged that defendant sold CDL in August 2019 for $1.1 million without

-1-

her knowledge or consent and that he refused to allow her to retrieve her personal property both before and after the sale.

Plaintiff's complaint alleged breach of a joint venture agreement, unjust enrichment, breach of a fiduciary duty, and common-law and statutory conversion. Plaintiff alleged that defendant owed her a share of CDL's proceeds per their joint venture agreement. According to plaintiff, this agreement contemplated that the two would combine their assets, purchase property, construct a home, and later sell this home for a profit, splitting the proceeds. Each of plaintiff's claims relied on the existence of this agreement and defendant's alleged failure to consult her regarding the sale of CDL or split the proceeds with her. Defendant denied the existence of any such agreement and contended that he was the sole owner of CDL. In his initial answer to plaintiff's complaint, defendant gave a number of responses consisting of the following language: "Defendant neither admits nor denies but leaves the Plaintiff to her proofs."

Plaintiff filed a motion in limine, arguing that defendant's responses with the above language should be deemed admissions and that he should be prohibited from producing evidence that contradicted the admissions. Defendant opposed plaintiff's motion and alternatively requested leave to amend his answer to alter the language. Although the trial court expressed concern regarding defendant's answers, it permitted him to amend his answer. Defendant subsequently filed an amended answer dispensing with the challenged language.

Defendant later filed a motion for declaratory relief, arguing that judicial estoppel barred plaintiff's claims because she had failed to disclose the alleged joint venture agreement or any interest in CDL during the 2007 bankruptcy proceedings. Defendant argued that plaintiff's deposition testimony demonstrated that she had knowledge of the alleged agreement as far back as 2001 or 2002 but failed to disclose it. According to defendant, plaintiff deliberately failed to disclose the alleged agreement so that she could avoid the liabilities of bankruptcy and later seek to obtain profits from the eventual sale of the home. Defendant maintained that there was never a joint venture agreement; CDL was his home that he paid for exclusively with his own funds.

Plaintiff countered that her omission was due to inadvertence or mistake and not bad faith. She argued that she had been suffering from a mental disability during the bankruptcy proceedings, that she had relied on her bankruptcy attorney, that the agreement had been an ambiguous interest, and that defendant had not been harmed by the omission, all of which, according to plaintiff, precluded judicial estoppel. Plaintiff further argued that defendant's participation in her bankruptcy evidenced unclean hands. The trial court conducted an evidentiary hearing. The only witness was a bankruptcy attorney, Laura Breckenridge, who testified for defendant. Breckenridge was qualified without objection as an expert in bankruptcy law, and she discussed many aspects of the parties' 2007 bankruptcy proceedings, relevant bankruptcy legal principles, and her opinion on whether plaintiff intentionally concealed the alleged joint venture agreement. Breckinridge explained that in bankruptcy a debtor is required to list an asset if the debtor has knowledge of it whether or not they knew it had value at the time. Breckenridge identified the relevant section in plaintiff's bankruptcy petition where she could have disclosed "any interest in partnerships or joint ventures" but plaintiff left that section blank. Breckenridge went on to identify all the possible sections where plaintiff could have identified a joint venture agreement but did not. She further testified that when a debtor has knowledge of an asset but does not disclose that asset in bankruptcy, the trustee may seize the asset and liquidate it in order to pay creditors. In

Breckinridge's opinion, the JVA was known or should have been known at the time plaintiff filed for bankruptcy and judicial estoppel should be applied to "prevent the pursuit of this particular cause of action." Breckenridge stated that if there was a joint venture agreement, now only the bankruptcy trustee would have standing to pursue it.

After written arguments were submitted, the trial court issued its decision and ruled in defendant's favor. The trial court relied on *Spohn v Van Dyke Public Schs*, 296 Mich App 470; 822 NW2d 239 (2012) to find that judicial estoppel applied. The trial court found that plaintiff was aware of the joint venture agreement and did not disclose it on her bankruptcy petition. Therefore, plaintiff had no remaining interest in a purported joint venture agreement and was judicially estopped from maintaining otherwise. The trial court dismissed plaintiff's suit and this appeal followed.

## II. ANALYSIS

## A. PLEADINGS

Plaintiff argues that the trial court abused its discretion by allowing defendant to amend his answer. We disagree.

This Court reviews for an abuse of discretion a trial court's ruling on a motion for leave to file an amended pleading. *Kostadinovski v Harrington*, 321 Mich App 736, 742-743; 909 NW2d 907 (2017). This Court will "defer to the trial court's judgment, and if the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Id.* at 743. We review de novo the interpretation and application of a court rule. *Davis v Chatman*, 292 Mich App 603, 616; 808 NW2d 555 (2011).

A party may amend a pleading once as a matter of course within fourteen days of service. MCR 2.118(A)(1). Once that period has expired, a party may amend a pleading only by leave of the court or by written consent of the adverse party. MCR 2.118(A)(2). "Leave *shall be freely given* when justice so requires." *Id.* (emphasis added). "[A] motion to amend should ordinarily be granted." *Kostadinovski*, 321 Mich App at 743. "A court must give a particularized reason for denying leave to amend a pleading." *Id.* Acceptable reasons for denial include undue delay, bad faith, repeated failures to cure deficiencies after previous amendments, undue prejudice, and futility. *Id.*

Defendant was no longer entitled to amend his answer as of right, thereby necessitating his motion to amend. Plaintiff argues that allowing defendant to amend was an abuse of discretion because defendant waited until the "eleventh hour," she was prejudiced by the delay, and she was entitled to rely on his responses as admissions. Plaintiff relies on *Blouin v Yeo*, unpublished per curiam opinion of the Court of Appeals, issued November 15, 2011 (Docket No. 298800), an unpublished case in which this Court held that an answer akin to "defendant neither admits nor denies but leaves plaintiff to her proofs" is properly construed as an admission because it is not an explicit admission, denial, or assertion of lack of knowledge (which has the effect of a denial), as is required for all responsive pleadings under MCR 2.111(C). *Blouin* at 3-4. However, the Court reversed and remanded to allow the defendant to amend his answers to conform with MCR 2.111(C), as the trial court properly allowed here. Moreover, plaintiff's position is untenable

because it would excuse plaintiff from producing any evidence to support her claims. Granting substantive relief on the merits because of insufficient answers to a complaint is disfavored. See 1 Longhofer, Michigan Court Rules Practice, Text (8th ed), § 2111.8, p. 364; *McPhail v Dep't of Ed*, unpublished per curiam opinion of the Court of Appeals, issued February 17, 2022 (Docket No. 354256), p. 12.[1] "[Longhofer] suggests that MCR 2.111(E) should not be read to include, as a sanction, that an improper denial constitutes an admission, because that involves a strained reading of the subrule." *McPhail*, unpub op at 10. Instead, plaintiff should have moved for a more definite statement under MCR 2.115(A). See Longhofer, p. 364; *McPhail*, unpub op at 12.

Furthermore, plaintiff's claim that she was prejudiced by the late amendment is unpersuasive. At the hearing, plaintiff contended that she would have hired a forensic accountant if she had known that defendant would not be bound by his admissions. Delay alone does not warrant denial of a motion to amend but when delay causes actual prejudice, that may give reason to deny amendment. *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 321; 503 NW2d 758 (1993).

Here, Plaintiff has not shown how the amendment prejudiced her. Trial was not imminent. Plaintiff's motion in limine was filed in November 2020, and the amendment of the answer occurred in December 2020. The trial court stated that the soonest a trial could potentially begin was September 2021, and the trial court stated that there were, accordingly, no real time constraints for the case. Plaintiff had more than adequate time to hire a forensic accountant if she desired. Therefore, plaintiff has failed to show that permitting defendant to amend his answers was an abuse of discretion.

## B. DECLARATORY JUDGMENT

Plaintiff next argues that she was entitled to a jury trial and that the trial court usurped the jury's role when it entered the declaratory judgment. Plaintiff asserts that the trial court, in entering declaratory judgment, misconstrued Michigan Court Rule 2.605. We disagree.

Whether a party is entitled to a jury trial is a question of law, which we review de novo. *Anzaldua v Band*, 457 Mich 530, 533; 578 NW2d 306 (1998). The trial court has discretion on whether to issue a declaratory judgment. *Allstate Ins Co v Hayes*, 442 Mich 56, 64-65; 499 NW2d 743 (1993). MCR 2.605 governs declaratory judgments. MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." The rule goes on to explain that an action is considered "within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than declaratory judgment." MCR 2.605(A)(2).

---

[1] Unpublished decisions of this Court are not precedentially binding but may provide persuasive value. MCR 7.215(C)(1); *Eddington v Torrez*, 311 Mich App 198, 203; 874 NW2d 394 (2015).

MCR 2.605(B) provides: "The procedure for obtaining declaratory relief is in accordance with these rules, and the right to trial by jury may be demanded under the circumstances and in the manner provided in the constitution, statutes, and court rules of the State of Michigan." The Michigan Constitution provides, "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law." Const 1963, art 1, § 14.

The trial court held an evidentiary hearing on defendant's motion for declaratory judgment, as described above. Plaintiff did not object to holding this hearing as violative of her right to a jury trial. Plaintiff fully participated in the hearing; her attorney thoroughly cross-examined the expert witness and formulated a thoughtful response to defense counsel's written arguments.

Plaintiff contends that declaratory relief was not appropriate because there were factual disputes that should have been tried to a jury. Specifically, there were questions of fact regarding plaintiff's good faith, her mental state at the time of the bankruptcy proceedings, and defendant's culpability in assisting in the non-disclosure of plaintiff's interest in the JVA.

The trial court was empowered to issue the declaratory judgment despite the existence of factual disputes. As our Supreme Court previously explained,

> Contemporary courts have repeatedly recognized that the purpose of the rule is to allow parties to avoid multiple litigation by enabling litigants to seek a determination of questions formerly not amenable to judicial determination, and that the rule is to be liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people. [*Hayes*, 442 Mich at 64-65 (citations and internal quotation marks omitted).]

Although the *Hayes* Court recognized that much older Supreme Court precedent, namely *Rott v Standard Accident Ins Co*, 299 Mich 384; 300 NW 134 (1941), had held that declaratory actions were improper when the issues involved questions of fact, the Court clarified that the older and "[n]arrow interpretations of the availability of declaratory relief were decisively rejected with the advent of GCR 1963, 521. The drafters of the court rule recognized the usefulness of the action for declaratory judgment and intended to provide for the broadest type of declaratory judgment procedure." *Hayes*, 442 Mich at 65-66 n 8. "MCR 2.605 is comparable to GCR 1963, 521." *Durant v State*, 456 Mich 175, 209 n 37; 566 NW2d 272 (1997). Under the modern MCR 2.605, the trial court properly considered the motion for declaratory judgment. Furthermore, there is nothing in MCR 2.605 that prohibits a defendant from seeking declaratory relief in defense of a claim or claims.

## C. JUDICIAL ESTOPPEL

Finally, plaintiff argues that the trial court erred when it granted judicial estoppel. We disagree.

We review de novo the trial court's decision on judicial estoppel and its findings of fact are reviewed for clear error. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012).

Clear error occurs when "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016). Furthermore, "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C).

The judicial estoppel doctrine is one of equity in which a party who successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting a contrary position in a subsequent proceeding. *Spohn*, 296 Mich App at 4780 (quotation marks and citation omitted). However, the doctrine should be applied cautiously because it essentially prevents courts from examining the truth of a party's position. *Id*. A trial court is not required to apply judicial estoppel; it rests within its discretion. *Opland v Kiesgan*, 234 Mich App 352, 365; 594 NW2d 505 (1999). The doctrine is an extraordinary remedy to be invoked when a party's inconsistent behavior will result in a miscarriage of justice and "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims . . . ." *Opland*, 234 Mich App at 364 (quotation marks and citations omitted).

To support a finding of judicial estoppel in the bankruptcy context, a reviewing court must find that three factors are satisfied: (1) the plaintiff assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition, and (3) the plaintiff's omission did not result from mistake or inadvertence. *Spohn*, 296 Mich App at 480-481. Regarding the first element, i.e., a contrary position, we have stated that this element is met by failing to disclose during bankruptcy an interest or potential claim against another party, reasoning that the Bankruptcy Code "requires a debtor to file a schedule of assets and liabilities" and that "[i]t is routinely recognized that a potential cause of action constitutes an asset that must be included under [the bankruptcy code]. *Id*. at 481. "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed. *Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional." *Id*. at 482 (alteration in original; citation omitted).

Moreover, a debtor has a *continuing* obligation to disclose such assets or claims:

> The rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that *the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. [*Id*. (alterations in original; citation omitted).]

Regarding the third element, i.e., whether an omission was a mistake or inadvertent, "[the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Id*. at 480 (alterations in original). A motive for concealment is *presumed* because a debtor has a clear motive to conceal assets to avoid paying out to creditors. *Id*. at 485. Regarding whether there was bad faith, we explained that "[the reviewing court] will look, in

-6-

particular, at [the plaintiff's] 'attempts' to advise the bankruptcy court of [the plaintiff's] omitted claim." *Id.* at 480 (alterations in original).

In the present case, there was no dispute that plaintiff failed to disclose the alleged joint venture agreement in her own bankruptcy petition. Defendant did not list the agreement in his bankruptcy petition, and plaintiff was never listed as a creditor in CDL; nor did she file a claim as a creditor in defendant's bankruptcy case. Moreover, it is undisputed that plaintiff failed to amend her bankruptcy petition to include the agreement. Therefore, the first element was met. The second element was met as well; plaintiff's contrary position was accepted by the bankruptcy court because her Chapter 7 bankruptcy petition was accepted.

As to the third element, evidence supported the trial court's finding that plaintiff's omission did not result from mistake or inadvertence. In her deposition, plaintiff testified that she and defendant discussed the JVA together in 2001 or 2002, which was long before the bankruptcy proceedings in 2007. Although plaintiff later submitted an affidavit in which she affirmed that they never used the legal term "joint venture agreement" and that it did not occur to her or her bankruptcy attorney that she held an interest in the agreement, plaintiff did not need to know all the specifics or legal basis for the purported agreement; it is sufficient that she knew of her alleged agreement with defendant and of the interest she later claimed in CDL. See *id.* at 482.

Additionally, a motive to conceal was presumed because plaintiff had clear motive to conceal assets to avoid paying creditors. There was also evidence of bad faith. Breckenridge testified that in plaintiff's bankruptcy case there had been *no* assets that could be liquidated and distributed to creditors. If plaintiff had disclosed the agreement, there would have been *some* assets to potentially liquidate and distribute to her creditors. Moreover, plaintiff failed to disclose the agreement in an amendment after the bankruptcy proceedings ended, which provided further evidence of purposeful concealment.

The agreement was not an ambiguous or confusing interest as plaintiff suggests. According to her own deposition testimony, it was a simple arrangement in which the parties allegedly agreed to combine their assets, purchase property, construct a house, and subsequently sell that house for a profit. Plaintiff argues that her mental capacity was so diminished during the bankruptcy proceedings that her omission was the result of mistake or inadvertence. However, plaintiff has failed to show *how* her mental capacity was diminished during those proceedings such that she failed to understand either the bankruptcy proceedings (that she initiated) or the alleged agreement. In support of her assertion, she submitted what appears to be an approved Social Security Disability claim from 2004, long before the bankruptcy proceedings began. This claim does nothing to show how or why her mental capacity was so severely impacted in the bankruptcy proceedings as to preclude judicial estoppel. Plaintiff claims the trial court prevented her from submitting medical evidence, but the record does not support this assertion. She had many opportunities to present such evidence, such as in her written arguments submitted after the hearing, but she failed to do so.

Plaintiff further contends that she cannot be held responsible for her bankruptcy attorney's errors in not disclosing the JVA. But she provides no binding authority to support this assertion. Moreover, she provided no evidence that it was the fault of her attorney. Plaintiff's deposition testimony demonstrates that she was aware of the alleged agreement long before her declaration

of bankruptcy. Plaintiff argues that her disability caused her to rely on defendant to complete her bankruptcy paperwork and that his participation in her bankruptcy equates to unclean hands. Although it is true that plaintiff affirmed that defendant had assisted her in preparing the bankruptcy paperwork, her attorney also helped her, and there was no evidence presented to suggest that defendant was the reason she omitted the agreement or that he was the primary person who completed her bankruptcy paperwork.

Plaintiff summarily asserts that defendant benefited from the omission and was not harmed, but she points to no evidence. In contrast, Breckenridge indicated that defendant could have potentially benefited had the agreement been listed in plaintiff's bankruptcy petition. Contrary to plaintiff's assertions, the trial court did not "abdicate" its role by deferring to Breckenridge's expertise on the law. The trial court engaged in a thoughtful and extensive review of the applicable law, which included Breckenridge's expert testimony

Plaintiff has failed to demonstrate that she is entitled to relief. Each of the claims in her four-count complaint related to the alleged agreement and interest in CDL. With this interest barred by judicial estoppel, she had no remaining viable claims against defendant. Therefore, declaratory judgment was appropriate.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219.


/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle