*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SILVER CAPITAL GROUP, LLC,

        Plaintiff/Counterdefendant-Appellee,

v

MELVIN UNDERWOOD and PATRICIA UNDERWOOD,

        Defendants/Counterplaintiffs/Third-Party Plaintiffs-Appellants,

and

STERLING HOWARD,

        Third-Party Defendant-Appellee.

UNPUBLISHED
March 17, 2022

No. 355037
Oakland Circuit Court
LC No. 2019-172294-CH

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

This appeal arises from a complaint to quiet title to property located in Oak Park, Michigan. Melvin and Patricia Underwood appeal the circuit court's September 17, 2020 order granting summary disposition in favor of Silver Capital Group, LLC, on its complaint to quiet title to the subject property under MCR 2.116(C)(10) (no genuine issue of material fact). The order also dismissed with prejudice the Underwoods' counterclaim against Silver Capital and third-party complaint against Sterling Howard, Silver Capital's managing member. Lastly, the order denied the Underwoods' request for relief under MCR 2.116(I)(2) (opposing party entitled to summary disposition). We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2004, the Underwoods entered into a mortgage and later defaulted. In December 2011, Silver Capital purchased the property for $25,000 in a short sale. As part of the sale, the Underwoods conveyed the property to Silver Capital by warranty deed. Also in December 2011, the Underwoods signed a land contract to purchase the property back for $60,000. Focus Financial Group Network, LLC, was named as the "Seller." The Underwoods remained in the home and made payments on the land contract. In 2013, Silver Capital, Focus Financial, and the Underwoods signed a memorandum of land contract. The memorandum reflected that Focus Financial *and* Silver Capital would be referred to as "the Seller" under the original land contract. Thereafter, the Underwoods made land contract payments to Silver Capital.

In 2018, Silver Capital initiated two land contract forfeiture actions against the Underwoods in district court, alleging that the Underwoods had defaulted on the land contract. Both actions were dismissed. In January 2019, Focus Financial purported to transfer the property to the Underwoods via quit claim deed.

In March 2019, Silver Capital filed a seven-count complaint in the circuit court. In relevant part, Silver Capital sought to quiet title to the property in its favor, arguing that it had fee simple title to the property because the Underwoods had defaulted on the land contract. In response, the Underwoods alleged that the warranty deed and memorandum of land contract were "fraudulent." The Underwoods also filed a counterclaim against Silver Capital and a third-party complaint against Howard, alleging fraud, slander of title, and malicious prosecution.

In November 2019, Silver Capital and Howard moved for summary disposition under MCR 2.116(C)(8) (failure to state a claim), (C)(9) (failure to state a valid defense), and MCR 2.116(C)(10).[1] They argued that Silver Capital was entitled to a "determination . . . that its title [in the property] is superior to" the Underwoods because the Underwoods transferred fee simple title to Silver Capital by warranty deed and Silver Capital did not transfer any interest in the property to any other entity, including Focus Financial. Contrary to the allegations in the complaint, Silver Capital also asserted that it had never entered into a land contract with the Underwoods. Silver Capital and Howard further argued that the circuit court should dismiss the Underwoods' counterclaim and third-party complaint. The Underwoods opposed the motion and moved for summary disposition under MCR 2.116(I)(2).

In January 2020, the circuit court held oral argument on the competing motions for summary disposition. Rather than rule on the motions, however, the circuit court requested that the parties provide a stipulation of facts for purposes of trial. The circuit court later ordered that oral argument on the motions for summary disposition would resume in April 2020. However, there is no indication that the circuit court heard oral argument in April 2020. Thereafter, the parties filed notices of hearing on the pending motions for summary disposition. Before a hearing could be held in September 2020, the circuit court issued an order granting Silver Capital and Howard's motion for summary disposition "for the reasons set forth on the record." The circuit court also dismissed the Underwoods' counterclaim against Silver Capital and their third-party

---

[1] Discovery was scheduled to close in December 2019.

complaint against Howard with prejudice, and denied the Underwoods' request for relief under MCR 2.116(I)(2). This appeal followed.

## II. JURISDICTIONAL ISSUE

At the outset, we must address a jurisdictional issue. Silver Capital and Howard argue that this Court lacks jurisdiction because the circuit court's September 2020 order stated that it was not a final order. We disagree.

MCR 7.202(6)(a)(i) defines "final order" as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties. . . ." In this case, the circuit court's September 2020 order granted summary disposition in favor of Silver Capital on its quiet title claim and granted summary disposition in favor of Silver Capital and Howard on the Underwood's counterclaim and third-party complaint. Although Silver Capital filed a seven-count complaint, Silver Capital's complaint establishes that Silver Capital was only pursuing these claims in the event that the circuit court "determine[d] that the [Underwoods] ha[d] an interest in the subject property. . . ."[2] Thus, because there was nothing left for the circuit court to decide after it granted summary disposition, we conclude that the court's September 2020 order was a final order appealable by right. See *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 148 n 1; 742 NW2d 409 (2007).

## III. STANDARDS OF REVIEW

"Equitable issues are [generally] reviewed de novo. . . ." *Stock Bldg Supply, LLC v Crosswinds Communities, Inc*, 317 Mich App 189, 199; 893 NW2d 165 (2016). "This Court [also] reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted).

"A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). The "trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id.* at 160 (citations omitted).

A motion under MCR 2.116(C)(10), on the other hand, tests the *factual sufficiency* of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted

---

[2] Although Silver Capital and Howard argued at oral argument that the circuit court still had to address Silver Capital's claims for monetary relief, this argument is disingenuous and belied by the complaint. Additionally, in the motion for summary disposition, Silver Capital acknowledged that its "complaint alleges seven counts, but counts II-VII are plead in the alternative in the unlikely event this court determines that Defendants have any title interest in the Property."

-3-

when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*Id*. at 160 (quotation marks and citations omitted).]

## IV. ANALYSIS

### A. SUMMARY DISPOSITION OF SILVER CAPITAL'S QUIET TITLE CLAIM

The Underwoods argue that the circuit court erred by granting Silver Capital's motion for summary disposition and by quieting title to the subject property in Silver Capital because there remain genuine issues of material fact regarding the superiority of Silver Capital's title. We agree.

An action to quiet title is equitable in nature and is "available to a party in possession of real property who [seeks] to clear the property's title as against the world." *Adams v Adams*, 276 Mich App 704, 711; 742 NW2d 399 (2007). In a quiet title action, the plaintiff "has the initial burden of establishing a prima facie case of title[.]" *Special Prop VI v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). If the plaintiff establishes a prima facie case of title, the burden shifts to the defendants to prove "superior right or title in themselves." *Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). We conclude that Silver Capital failed to meet its burden and that summary disposition was therefore improper.

In 2011, the Underwoods conveyed the property to Silver Capital via warranty deed. Thereafter, the Underwoods entered into a land contract with Focus Financial, which was identified in the contract as the "Seller." The contract reflected that the Underwoods agreed to purchase the property for $60,000 and to make payments to Focus Financial. Silver Capital alleged in its complaint that "the land contract mistakenly omitted Silver Capital as a Seller. . . ." In December 2013, a memorandum of land contract was signed by the Underwoods, by LaJuan Grier on behalf of Focus Financial, and by Howard on behalf of Silver Capital Group. The memorandum of land contract was notarized and recorded, and the Underwoods began making payments to Silver Capital.

Although Silver Capital's complaint alleges that the Underwoods stopped making the required land contract payments, Silver Capital failed to present evidence to support this assertion. Instead, Silver Capital alleged that it was entitled to summary disposition because it had never entered into a land contract with the Underwoods and therefore held fee simple interest in the property. However, this argument is inconsistent with the allegations in Silver Capital's complaint and is belied by the record. See *El-Khalil*, 504 Mich at 160 (noting that "[a] motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency of a claim*" and that a court "must consider all evidence submitted by the parties") (some emphasis added). Because Silver Capital failed to establish that the Underwoods had defaulted on the land contract and instead made assertions that were contradicted by the allegations in its complaint and by the record, the circuit court erred by granting summary disposition in favor of Silver Capital on the quiet title claim.

We acknowledge that the Underwoods presented evidence that they paid off the land contract. However, it does not appear that the circuit court considered this argument. Indeed, the circuit court indicated that it was granting summary disposition "for the reasons set forth on the

record" despite not having made any rulings on the record. Furthermore, after reviewing the record, we conclude that the argument was not fully developed and that it would be beneficial for the circuit court to address the issue of whether the Underwoods paid the land contract in full. Consequently, we decline to consider the argument and find it proper to remand the matter to the circuit court. Given this holding, we need not consider the remainder of the Underwoods' arguments concerning the quiet title claim.[3]

## B. SUMMARY DISPOSITION OF THE UNDERWOODS' COUNTERCLAIM AND THIRD-PARTY COMPLAINT

The Underwoods next argue that the circuit court erred by granting summary disposition of their counterclaim and third-party complaint in favor of Silver Capital and Howard. We disagree.

### 1. SLANDER OF TITLE CLAIM

Slander of title claims provide a "remedy for malicious publication of *false statements* that disparage a plaintiff's right in property." *B & B Inv Group v Gitler*, 229 Mich App 1, 8; 581 NW2d 17 (1998) (emphasis added).

In this case, the Underwoods alleged that Silver Capital and Howard slandered their title to the property by recording "a fraudulent Memorandum of Land Contract with the register of deeds, adding [Silver Capital] as a putative party to the contract referenced in the memorandum when it was not a party to the contract." The Underwoods also alleged that Silver Capital and Howard slandered their title to the property by recording "a fraudulent deed. . . ." However, both the warranty deed and the memorandum were notarized. There is a presumption that the facts contained in a document to which a notary public's seal is affixed are true, *Settles v Detroit City*

---

[3] Silver Capital argues that this Court should apply the doctrine of judicial estoppel, which is an equitable doctrine that a court may invoke at its discretion to preserve the court's integrity "by preventing a party from abusing the judicial process through cynical gamesmanship." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479-480; 822 NW2d 239 (2012) (quotation marks and citations omitted). In support, Silver Capital argues that the Underwoods take "a position [contrary] to the one they took in the prior district court proceedings," i.e., that they did not enter into a land contract with Silver Capital. We conclude that this is an issue for the circuit court to consider on remand. We note, however, that "[j]udicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Opland v Kiesgan*, 234 Mich App 352, 364; 594 NW2d 505 (1999) (quotation marks and citations omitted). Judicial estoppel "is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. . . ." *Id*. (quotation marks and citations omitted). We also note that Silver Capital takes a contrary position. Indeed, despite filing two forfeiture actions in the district court on the basis of the land contract and alleging in its circuit court complaint that it entered into a land contract with the Underwoods, Silver Capital argued before the circuit court in its motion for summary disposition and before this Court on appeal that it *never* entered into a land contract with the Underwoods.

*Clerk*, 169 Mich App 797, 807; 427 NW2d 188 (1988), and this presumption is only rebutted by "clear, positive and credible evidence in opposition," *Vriesman v Ross*, 9 Mich App 102, 106; 155 NW2d 857 (1967).[4] The Underwoods did not present evidence to support that the signatures that appeared on the warranty deed and the memorandum of land contract were not their signatures. Rather, the Underwoods merely alleged that they did not sign the documents, which is not sufficient to overcome a motion for summary disposition. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). Consequently, reasonable minds could not differ as to whether the Underwoods signed the warranty deed and the memorandum of land contract. Moreover, the record supports that a representative from Embassy Title Agency, Inc.—not Silver Capital or Howard—recorded the warranty deed. Accordingly, the circuit court did not err by granting summary disposition on the slander of title claim.

## 2. FRAUD CLAIM

In *Maurer v Fremont Ins Co*, 325 Mich App 685, 695; 926 NW2d 848 (2018) (alterations in original), we reiterated the elements of fraud:

> Actionable fraud, also known as fraudulent misrepresentation, *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), requires that
>
> (1) the [party] made a material representation; (2) the representation was false; (3) when the [party] made the representation, the [party] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the [party] made the representation with the intention that the [opposing party] would act upon it; (5) the [opposing party] acted in reliance upon it; and (6) the [opposing party] suffered damage. [*M & D, Inc v McConkey*, 231 Mich App 22, 27; 585 NW2d 33 (1998) (quotation marks and citation omitted).]

The Underwoods alleged that Silver Capital and Howard engaged in fraud. However, the Underwoods did not make any allegations that Silver Capital and Howard made a material misrepresentation to *them*. Rather, the Underwoods alleged that Grier "promised to save the[ir] property from foreclosure and presented them with a land contract with Focus Financial. . . ." The

---

[4] The *Settles* Court and the *Vriesman* Court cited former MCL 55.113, which provided, in relevant part, that "the certificate of a notary public, under his hand and seal of office, of official acts done by him as such notary, shall be received as presumptive evidence of the facts contained in such certificate." Similarly, current MCL 55.307 provides, in relevant part, that "the certificate of a notary public of official acts performed in the capacity of a notary public, under the seal of office, is presumptive evidence of the facts contained in the certificate. . . ." A "notary's certificate" is "[a] notary's signed and sealed or stamped statement attesting to the time and place that the specified acts and documents were authenticated." *Black's Law Dictionary* (8th ed). In this case, the notaries swore that the Underwoods appeared before them and signed the warranty deed and the memorandum of land contract.

Underwoods further alleged that they "satisfied their entire obligation on the land contract" and that Howard thereafter "caused to be recorded a fraudulent Memorandum of Land Contract with the register of deeds, adding [Silver Capital] as a putative party to the contract. . . ." Also, the Underwoods alleged that Silver Capital and Howard "fraudulently" recorded the warranty deed, then filed suit in the district court and claimed that the Underwoods had defaulted on the land contract, thereby entitling Silver Capital to possession of the property. Thus, the Underwoods failed to allege that Silver Capital or Howard made a material misrepresentation to the Underwoods and that the Underwoods acted in reliance on Silver Capital and Howard's purported material misrepresentations. Rather, at best, the allegations support that Silver Capital and Howard made misrepresentations to others concerning Silver Capital's interest in the property. Consequently, the circuit court did not err by granting summary disposition on the fraud claim.[5]

### 3. MALICIOUS PROSECUTION CLAIM

The "elements of a tort action for malicious prosecution of civil proceedings are: (1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, and (3) malice," which is "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Friedman v Dozorc*, 412 Mich 1, 48; 312 NW2d 585 (1981) (quotation marks and citations omitted). The plaintiff must also prove "special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings." *Id*. at 38-41. A "special injury" is an "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Id*. at 32-33. It must be an injury that would not necessarily occur in all lawsuits alleging similar causes of action. *Barnard v Hartman*, 130 Mich App 692, 695-696; 344 NW2d 53 (1983).

In this case, the Underwoods did not allege that they sustained any special injuries as a result of the district court lawsuits. Additionally, contrary to the Underwoods' assertion on appeal, they did not specifically plead "the threatened loss of their home and a cloud on their real property" in the circuit court. Even if they had, this would not be sufficient because, in order to prove special injury, a plaintiff must prove "special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings." *Friedman*, 412 Mich at 39-41. The Underwoods' property was not seized as a result of the district court proceedings. In fact, those actions were dismissed. To the extent that the Underwoods alleged that their reputations were damaged or that they were forced to incur legal fees as a result of Silver Capital filing the actions in district court, these injures are not of an unusual nature. Indeed, they are "of the same kind as that normally flowing from the maintenance of similar actions[.]" *Barnard*, 130 Mich App at 695-696 (quotation marks and citation omitted). Moreover, the Underwoods failed to offer evidence to support that they suffered special injuries as a result of the lawsuits filed by Silver Capital. Consequently, the circuit court did not err by granting summary disposition on the malicious prosecution claim.

---

[5] The Underwoods allege that Silver Capital and Howard committed "deed fraud." However, the Underwoods fail to provide any binding authority to support that such a cause of action exists in Michigan. See *Hughes v Almena Twp*, 284 Mich App 50, 72; 771 NW2d 453 (2009) ("The failure to cite sufficient authority results in the abandonment of an issue on appeal.").

Affirmed in part,[6] vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[6] While it is not clear why the circuit court granted summary disposition on the counterclaim and third-party complaint, it is nonetheless proper to affirm. See *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A . . . court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").